CORRIGAN DISPATCH COMPANY,
Plaintiff-Appellee,

v.

CASA GUZMAN, S. A.,
Defendant-Appellant,

Cargill, Inc., et al., Defendants-Appellees.

No. 77–2835
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 9, 1978.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

C. M. Zaffirini, Laredo, Tex., for defendant-appellant.

J. G. Hornberger, J. G. Hornberger, Jr., Laredo, Tex., for plaintiff-appellee.

Gary Norton, Arthur W. Zeitler, Corpus Christi, Tex., George P. Kazen, Laredo, Tex., for Cargill, Inc.

Before THORNBERRY, GODBOLD and RUBIN, Circuit Judges.

PER CURIAM.

One of the claimants to a commodity deposited in the registry of the court pursuant to the interpleader statute, 28 U.S.C. § 1335, appeals the trial court's failure to require security upon issuance of the interpleader order, which was accompanied by a preliminary injunction against other litigation with respect to ownership of the commodity or its proceeds, as well as the court's later failure, upon authorizing the sale of the commodity and the deposit of the net proceeds into the court's registry, to require other security. There having been no error in the actions of the court that are complained of, we summarily affirm.

Corrigan Dispatch Company, an import agent and warehouseman, had custody of 1000 sacks of green coffee. Several parties claimed ownership of the coffee. Therefore, Corrigan filed an interpleader action under 28 U.S.C. § 1335. It alleged that there were four claimants to the coffee, sought to place the disputed property in judicial custody, and asked the court to determine the owner. The four claimants were named in the complaint, and each was properly served.

Guzman, one of the interpleaded parties, originally owned the coffee. On February 8, 1977, it agreed to sell the coffee to Cargill for $327,052.41. Cargill, in turn, contracted to sell the coffee to Mitsui. However, various problems arose with respect to delivery of the coffee to the warehouse and the import documentation. On March 11, 1977, after all of the coffee had been delivered to Corrigan, the warehouseman, Guzman notified Cargill that it considered Cargill in breach of the contract of sale due to Cargill's failure to tender payment. Guzman requested and received a storage receipt for the coffee from Corrigan. It notified Corrigan that the coffee was held for Guzman's account and not Cargill's. Guzman then made a telephone offer to sell the coffee to Balzac Brothers.

On March 16, Guzman and Balzac Brothers consummated a purported sale by telephone, and Balzac Brothers signed a purchase order promising cash to Guzman against the warehouse receipt for the coffee. Corrigan issued a storage receipt to Guzman for the account of Balzac Brothers. Thereafter, Corrigan received a letter from Guzman that the coffee had been sold to Balzac Brothers.

In the interim, Cargill notified Corrigan by telegram to dispatch the coffee per Mitsui's instructions, and informed Corrigan that it would be held liable if it dispatched the coffee per Guzman's instructions. On March 17, Guzman gave the Corrigan warehouse receipt for the coffee to Balzac Brothers, and Guzman received Balzac Brothers' check for $418,330.00. Balzac Brothers directed Corrigan to ship the coffee to Canada, and, when Corrigan refused, Balzac Brothers issued a stop payment on its check to Guzman.

Corrigan's action interpleaded Cargill, Mitsui, Guzman and Balzac Brothers. The trial court found that Cargill did not have right to possession of the coffee because the concurrent conditions for performance of the contract had not occurred, and found that Balzac Brothers had right to possession of the coffee on its delivery of the storage

receipt from Guzman. It issued a mandatory preliminary injunction pursuant to which Corrigan delivered the coffee to Balzac Brothers and Balzac Brothers paid the full purchase price into the court's registry.[1]

The Bank[2] intervened in the action and asked to withdraw funds from the trial court as holder in due course of the check deposited to the account of Guzman. On June 30, the trial court issued an Amendment to the Interlocutory Order, agreed to by all the parties, including Guzman, whereby the Bank and Guzman were paid $248,330.00 out of the monies deposited by Balzac Brothers. The court held the remaining $170,000.00 as security for the payment of such costs and damages as may be incurred by any party pending final judgment of the court. Guzman filed its motion to dissolve or modify the preliminary injunction and asked the trial court to order additional security pursuant to Federal Rules of Civil Procedure 65(c). The trial court denied Guzman's motion, and Guzman appealed to this court.

■ Guzman's first contention is that the trial court abused its discretion by directing Balzac Brothers to deposit the purchase price of the coffee in the registry of the court as a condition of releasing the coffee and by enjoining Balzac Brothers from paying the purchase price to Guzman. Guzman argues that the trial court's action was garnishment and was done without following the garnishment procedures enunciated in Rule 64 of the Federal Rules of Civil Procedure.

Appellant has incorrectly characterized the court action as garnishment. A garnishment is a "seizure of . . . property for the purpose of securing satisfaction of the judgment ultimately to be entered." (Rule 64, F.R.C.P.) The interlocutory order in question was issued in connection with a statutory interpleader filed by Corrigan under 28 U.S.C. § 1335 and Rule 65 of the Federal Rules of Civil Procedure. The

property subject to dispute was placed in the registry of the court. There was no "seizure" nor attempt to satisfy a judgment.

Rather than serving to satisfy a judgment, the interlocutory order, whereby green coffee was issued to Balzac Brothers upon tender of the purchase price into the court, served to preserve the rights of all parties involved pursuant to the interpleader statute. The purpose of a preliminary injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. *Meis v. Sanitas Service Corp.*, 5 Cir. 1975, 511 F.2d 655; *Chacon v. Granata*, 5 Cir. 1975, 515 F.2d 922. The parties' rights would not have been adequately protected if the court retained perishable goods in its registry.

■ It is not grounds for reversal that the trial court's interlocutory order was issued prior to the time that appellant was made a party by substitute service of process. Rule 65(a) does not require service of process. The Rule does require notice to the adverse party. Appellant's attorney, Zaffirini, who later signed the Amended Interlocutory Order for Appellant, was served with written notice prior to issuance of the order in question. The sufficiency of written and actual notice is a matter for the trial court's discretion. *Plaquemines Parish School Board v. United States*, 5 Cir. 1969, 415 F.2d 817. We find no abuse of that discretion here.

■ There was no reason for the trial court, in an interpleader action, to require additional security. The coffee was held in the court's registry. When it was sold, for what was then its fair market value, the entire purchase price was retained.

■ Even if the interpleader injunction is considered as an injunction apart from the interpleader proceedings, hence subject to the requirements of Rule 65, that Rule

---

**1.** On May 6, 1977, this court denied Cargill's application for stay of the mandatory preliminary injunction pending Cargill's appeal. Cargill is not now an appellant.

**2.** Banco de Londres y Mexico.

requires security only in "such sum as the court deems proper." Rule 65(c), F.R.C.P. The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all. *International Controls Corp. v. Vesco*, 2 Cir. 1974, 490 F.2d 1334, *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236; *Continental Oil Co. v. Frontier Refining Co.*, 10 Cir. 1964, 338 F.2d 780, 782.

AFFIRMED.