**CORRIGAN DISPATCH COMPANY,**
**Plaintiff-Appellee,**

v.

**CASA GUZMAN, S.A., et al., Defendants.**

**CASA GUZMAN, S.A.,**
**Defendant-Appellant,**

v.

**BALZAC BROTHERS, INC.,**
**Defendant-Appellee.**

**No. 81–2511**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1983.

C.M. Zaffirini, Laredo, Tex., for defendant-appellant.

J.G. Hornberger, Jr., Laredo, Tex., for Corrigan Dispatch Co.

Lawrence Mann, Laredo, Tex., for Balzac Bros., Inc.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This appeal arises out of a dispute over the ownership of 1,000 sacks of coffee beans. Appellant, Casa Guzman, S.A. (Guzman), the seller, asserts error by the trial court in its ruling on its cross-action that: (1) Balzac Brothers, Inc. (Balzac), the rightful owner of the coffee, could stop payment on its check to Guzman after "receiving delivery" of the coffee being purchased and its warehouse receipt; (2) Balzac could stop payment on its check when the court "judicially admits" that Guzman is entitled to the funds; (3) Guzman should be denied damages for Balzac's alleged wrongful stop payment order; (4) Corrigan Dispatch Co. (Corrigan), the warehouseman, could breach its agreement to deliver coffee pursuant to the terms of its warehouse receipt; (5) Guzman should be denied damages for Corrigan's wrongful refusal to deliver coffee as it had agreed in its warehouse receipt; (6) Guzman should be denied damages for Corrigan's wrongful interpleader; and (7) granted Corrigan attorney's fees. Because we find no error in the actions of the trial court, we affirm.

I.

This case, involving a contract to purchase 1,000 sacks of coffee beans, has been brewing for several years, having been analyzed by two different panels of the Fifth

Circuit in two different appeals by Guzman.[1] The relevant facts of this "chock'd full o'nuts" dispute are set forth in the court's first opinion:

Corrigan Dispatch Company, an import agent and warehouseman, had custody of 1000 sacks of green coffee. Several parties claimed ownership of the coffee. Therefore, Corrigan filed an interpleader action under 28 U.S.C. § 1335. It alleged that there were four claimants to the coffee, sought to place the disputed property in judicial custody, and asked the court to determine the owner. The four claimants were named in the complaint, and each was properly served.

Guzman, one of the interpleaded parties, originally owned the coffee. On February 8, 1977, it agreed to sell the coffee to Cargill for $327,052.41. Cargill, in turn, contracted to sell the coffee to Mitsui. However, various problems arose with respect to delivery of the coffee to the warehouse and the import documentation. On March 11, 1977, after all of the coffee had been delivered to Corrigan, the warehouseman, Guzman notified Cargill that it considered Cargill in breach of the contract of sale due to Cargill's failure to tender payment. Guzman requested and received a storage receipt for the coffee from Corrigan. It notified Corrigan that the coffee was held for Guzman's account and not Cargill's. Guzman then made a telephone offer to sell the coffee to Balzac Brothers.

On March 16, Guzman and Balzac Brothers consummated a purported sale by telephone, and Balzac Brothers signed a purchase order promising cash to Guzman against the warehouse receipt for the coffee. Corrigan issued a storage receipt to Guzman for the account of Balzac Brothers. Thereafter, Corrigan received a letter from Guzman that the coffee had been sold to Balzac Brothers.

In the interim, Cargill notified Corrigan by telegram to dispatch the coffee per Mitsui's instructions, and informed Corrigan that it would be held liable if it dispatched the coffee per Guzman's instructions. On March 17, Guzman gave the Corrigan warehouse receipt for the coffee to Balzac Brothers, and Guzman received Balzac Brothers' check for $418,-330.00. Balzac Brothers directed Corrigan to ship the coffee to Canada, and, when Corrigan refused, Balzac Brothers issued a stop payment on its check to Guzman.

Corrigan's action interpleaded Cargill, Mitsui, Guzman and Balzac Brothers. The trial court found that Cargill did not have right to possession of the coffee because the concurrent conditions for performance of the contract had not occurred, and found that Balzac Brothers had right to possession of the coffee on its delivery of the storage receipt from Guzman. It issued a mandatory preliminary injunction pursuant to which Corrigan delivered the coffee to Balzac Brothers and Balzac Brothers paid the full purchase price into the court's registry.

The Bank[2] intervened in the action and asked to withdraw funds from the trial court as holder in due course of the check deposited to the account of Guzman. On June 30, the trial court issued an Amendment to the Interlocutory Order, agreed to by all the parties, including Guzman, whereby the Bank and Guzman were paid $248,330.00 out of the monies deposited by Balzac Brothers. The court held the remaining $170,000.00 as security for the payment of such costs and damages as may be incurred by any party pending final judgment of the court. Guzman filed its motion to dissolve or modify the preliminary injunction and asked the trial court to order additional security pursuant to Federal Rules of Civil Procedure

---

1. This matter is discussed in *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300 (5th Cir.1978), a case involving Guzman's appeal from the denial of its motion to dissolve a mandatory preliminary injunction. In the second, *Corrigan Dispatch Co. v. Casa Guz-* *man, S.A.*, 627 F.2d 238 (5th Cir.1980), the court affirmed a summary judgment for Cargill, Inc. (Cargill).

2. Banco de Londres y Mexico.

65(c). The trial court denied Guzman's motion, and Guzman appealed to this court.[3]

569 F.2d 301–02.

## II.

### A. Balzac's Check

■ Guzman argues as its first basis for appeal that the trial court committed reversible error in dismissing its cross-action for recovery of damages against Balzac because of Balzac's stopping payment on its check to Guzman in payment for the coffee. Guzman's argument is premised on the idea that it had fully performed its obligations under the contract. That is, it argues that by its delivery of the Corrigan warehouse receipt and Balzac's purported acceptance of delivery of the coffee at the warehouse, it had done all that it was required to do under its contract with Balzac.[4] On this basis, it argues that it is entitled to recover the "unpaid" purchase price plus interest[5]

on the coffee as well as incidental damages. We reject this argument.

To begin our analysis of Balzac's stop payment order on its check to Guzman, we must look first to the substance of the contract between the parties. Balzac clearly entered into a contract for the purchase of coffee. There is testimony in the record to indicate that Balzac was at all times dealing with the coffee. Moreover, the payment term of the contract (see note 4 supra) evidences concern on the part of Balzac that the coffee be ready for importation into the United States. Recall that Mitsui delayed paying Guzman for the coffee for this very reason. Finally, the fact that payment was to be made against non-negotiable warehouse receipts indicates that the contract was one to receive, hold and dispose of the coffee.[6] Thus, we hold that Balzac's duty to pay for the coffee was conditioned on its ability to remove the coffee from Corrigan's warehouse.[7]

3. The court affirmed the trial court's action. 569 F.2d 300.

4. The Balzac-Guzman contract provided for payment in the following manner:

> Cash against documents upon presentation to buyers forwarding agent (Carillio Company) Laredo, Texas. Documents to include all items necessary to introduce coffee into Interstate or Intrastate commerce in the USA and including proof of clearance by U.S. Customs and approval by U.S. Federal Food Drug and Cosmetics Act.

5. In its brief, Guzman asserts that it is entitled to recover from Balzac the sum of $170,000 plus interest at a rate of 18% per annum on the $418,330 contract price of the coffee, as well as an unspecified amount of incidental damages for wrongful stop payment. Guzman arrives at this award by claiming funds already paid by Balzac into the registry of the court but awarded to Cargill because of Guzman's breach of its contract to sell Cargill the coffee.

As the preceding excerpt from the Fifth Circuit opinion in Corrigan, 569 F.2d at 301–02, states, the trial court issued a mandatory preliminary injunction by which Balzac paid the full purchase price into the court's registry. Thereafter, the trial court issued an Amendment to the Interlocutory Order whereby the intervening bank and Guzman were paid $248,330 out of the monies deposited by Balzac. The court held the remaining $170,000 as security.

In the meantime, Cargill filed a separate claim against Guzman in federal district court. On August 18, 1977, it filed a motion for summary judgment asking the district court to give full faith and credit to the final judgment of a New York court awarding Cargill $151,867.09 plus 6% interest. The district court ordered the clerk to pay the remaining $170,000 retained in the registry. This judgment was affirmed by the Fifth Circuit on September 22, 1980. Corrigan, 627 F.2d 238.

The result of all this is that Guzman apparently is now seeking to have Balzac pay it the $170,000 which Balzac already deposited but which was awarded to Cargill. There is quite obviously no merit to this claim and, as a result, we will confine our discussion to Guzman's claim for incidental damages for wrongful stop payment.

6. Tex.Bus. & Com.Code Ann. § 1–201(15) (Vernon 1968), which defines "documents of title" to include warehouse receipts, states that these documents are to be "treated as adequately evidencing that the person in possession of it is entitled to receive, hold and dispose of the document *and the goods it covers.*" (emphasis added).

7. We point out that such a condition could be found here even in the absence of any intention by the parties. The commentators point out that

> a fact or event may be a condition of a contractual right or duty, even though the

On that basis, Guzman's delivery of the warehouse receipts covering goods to which there were competing claims and which were subject to an interpleader action constituted nonperformance of a condition by Guzman. As such, Balzac's duty to perform did not become due. Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused. Restatement (Second) of Contracts § 225(1) (1981). There being no excuse here, Balzac was not under a duty to pay Guzman for the coffee on being informed of the competing claims.

Even assuming that Balzac's duty to performance became due, Balzac would still have available here a "defense" to an action against it for breach. "If a fact or event is a condition precedent to a promisor's duty to render the performance promised, its absence or non-occurrence is a 'defense' in an action brought against him for breach of his promise. This is so whether the 'condition' is described as express, implied or constructive." *Corbin, supra* § 655.

Because we find that Balzac was not required to render its own performance in light of Guzman's failure to supply coffee capable of being disposed of by Balzac, we hold that Balzac was justified in stopping payment of its check upon being informed by Corrigan that the coffee would not be delivered because of the competing claims and interpleader action. On that basis, we hold that the Trial Court did not commit reversible error in dismissing the cross-action of Guzman and denying it recovery against Balzac on grounds of Balzac's stopping payment of its check to Guzman.

We should also point out here that had Balzac not stopped payment on its check to Guzman, Guzman would find itself in much the same position it is in now. By order of the court of March 30, 1977, Guzman was required to deposit into the Registry of the District Court any monies paid by Balzac to Guzman for the coffee in question. Thus, Guzman would not have retained the funds represented by Balzac's check even in the absence of Balzac's stop payment order and, as the result, Guzman could have no damages.

### B. *Corrigan's Refusal to Deliver*

Guzman argues as its second basis for appeal that it was entitled to recover damages against Corrigan for not delivering its coffee to Balzac. Guzman is correct when it asserts that under Article 7.403 of the Texas Business and Commerce Code Corrigan had an obligation to deliver Guzman's goods to "a person entitled under the document (warehouse receipt) ...".[8] Yet Guzman's position is only partially correct. Under that same section, a warehouseman is excused from his obligation to deliver if he has a personal defense against the claimant, § 7.403(6), or "any other lawful excuse", § 7.403(7). Thus the question here is not whether Corrigan had an obligation to deliver the coffee. It clearly did. The question here is whether Corrigan was lawfully excused from that obligation by the competing claims for Guzman's property. We hold that Corrigan did establish such a lawful excuse.

Corrigan excuses its failure to deliver Guzman's coffee to Balzac on the basis of its filing of an interpleader action.[9] Inter-

---

parties had no intention that it should so operate, said nothing about it in words, and did nothing from which an inference can be drawn.... It is operative as a condition for the reason that courts held or will hold it so on grounds of justice that are independent of expressed intention.

3A A. Corbin, Contracts § 632 (1960).

**8.** **§ 7.403. Obligation of Warehouseman or Carrier to Deliver; Excuse**
   (a) The bailee must deliver the goods to a person entitled under the document who complies with Subsections (b) and (c), unless

and to the extent that the bailee establishes any of the following:

\* \* \* \* \* \*

   (6) release, satisfaction or any other fact affording a personal defense against the claimant;
   (7) any other lawful excuse.

**9.** 28 U.S.C. § 1335. Interpleader
   (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500

pleader is a device which allows a party in possession of money or property belonging to another to join two or more parties asserting mutually exclusive claims to the property or fund in a single suit, thereby freeing the stakeholder from multiple liability or multiple lawsuits. An interpleader action may be instituted by a plaintiff when two or more persons have claims such that the plaintiff may be exposed to double or multiple liability. At this initial stage, the merits of these potential claims are irrelevant; the threat of multiple vexation by future litigation provides sufficient basis for interpleader under F.R.Civ.P. 22. *See* 3 A. Lucas and J. Moore, Moore's Federal Practice § 2202(1) (1974).

In this action, Corrigan was faced with the competing claims of Cargill and Balzac. E.H. Corrigan testified that Balzac threatened suit if delivery was not made. He also testified that representatives of Mitsui had claimed that the coffee belonged to it. On that basis, we hold that Corrigan's filing of an interpleader action was proper and that this filing constituted a lawful excuse for its obligation to deliver Guzman's goods. Guzman is therefore not entitled to recover

damages against Corrigan for its failure to deliver coffee to Balzac.

### C. Attorney's Fees

■ As its final basis for appeal, Guzman argues that it was error to allow Corrigan to recover attorney's fees in its interpleader action. Guzman bases this argument on its assertion that Corrigan breached its contractual obligation to ship Guzman's coffee to Balzac. In such cases, recovery of attorney's fees might be denied. *Miller v. Nacol*, 224 S.W.2d 734 (Tex.Civ.App.1949) (award of attorney's fees set aside because party instituting interpleader action was not a neutral stakeholder). We have held above, however, that Corrigan was excused from its obligation to deliver the coffee by the competing claims of Cargill and Balzac which resulted in its filing an interpleader action.

■ It is well settled that a district court has the authority to award costs, including reasonable attorney's fees, in interpleader actions. *James P. Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 468 (5th Cir.) *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30

or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting

claimants do not have a common origin, or are not identical, but are adverse to and independent of one another. June 25, 1948, c. 646, 62 Stat. 931.

F.R.Civ.P. 22. Interpleader.

(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

(2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C., §§ 1335, 1397, and 2361. Actions under those provisions shall be conducted in accordance with these rules.

L.Ed.2d 253 (1971); *Moore's Federal Practice, supra,* § 22.16[2]. This being the case, we hold that the Trial Court's award of attorney's fees to Corrigan in this matter was correct.[10]

AFFIRMED.

---

10. *Corrigan's motion to summarily dismiss the* appeal and for sanctions for frivolous and unmeritorious appeal is denied and its motion for award of attorney's fees on appeal is granted. Instead of remanding the case for a determination of the amount of attorney's fees to be awarded Corrigan, however, we award Corrigan $2,175.00 ($75.00 per hour) pursuant to its request to receive this reduced amount in lieu of further legal proceedings on remand.