Donna NOELLER, Plaintiff and counter-defendant,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant and counter-plaintiff,

v.

Estate of Wayne Noeller, Melanie Jones, Melinda Jones, and Alan W. Noeller, Third-party defendants.

No. 1:98–CV–1690.

United States District Court, E.D. Texas, Beaumont Division.

Nov. 10, 1999.

---

21. Rec. Doc. No. 434.

Jonathan Charles Juhan, Beaumont, TX, for plaintiff.

Paul E. Ridley, Carolyn Ruth Konicek, Jacqueline R. Peterson, Dallas, TX, for defendant.

Alan W. Noeller, pro se.

### *MEMORANDUM OPINION RE: ATTORNEY'S FEES*

HINES, United States Magistrate Judge.

This opinion contains the court's findings and conclusions regarding a dispute over attorney's fees in this interpleader action.[1]

### FACTUAL BACKGROUND

Wayne Noeller, a resident of Silsbee, Hardin County, Texas, was employed by Mobil Oil Corporation (Mobil). He participated in Mobil's Employee Welfare Plan (Plan) which provided life insurance benefits. He also obtained additional coverage under a group universal life policy (GUL) established for Mobil employees. Wayne Noeller's wife, Donna, was named as primary beneficiary under both policies. Wayne Noeller designated Alan Noeller, his son, and Melanie Jones and Melinda Jones, his step-daughters, as contingent beneficiaries.

Defendant and counter-plaintiff, Metropolitan Life Insurance Company (MetLife), administers all claims for benefits under the Plan. GUL is underwritten by MetLife, but is administered by Johnson & Higgens/Kirk–Van Orsdel, Inc. (J & H/KVI).[2]

Wayne Noeller died on August 9, 1996, by shotgun wound. At that time, a $78,400 death benefit was payable under the Plan. An identical amount was payable under GUL. On October 2, 1996, Donna Noeller submitted claims for Plan and GUL benefits. Attached to her claims was a death certificate, dated September 24, 1996, that identified the manner of death as "pending investigation." Donna Noeller also submitted a letter from the Hardin County sheriff's office, signifying that she was not a suspect in

---

1. The parties consented to adjudication of this action before the undersigned United States Magistrate Judge. *See* 28 U.S.C. § 636(c)(1) (1993).

2. J & H/KVI is not a party to this lawsuit.

Wayne Noeller's death. Thereafter, Donna Noeller submitted a revised death certificate, dated November 4, 1996, that identified the manner of death as "suicide."

MetLife paid Plan benefits to Donna Noeller on November 18, 1996. Pursuant to an insurance proceeds assignment, $6,173.98 was paid to a funeral home. The balance of $73,527.65 was deposited into a "total control account" in Donna Noeller's name.[3] She then withdrew approximately $20,000 from the total control account. On December 2, 1996, Donna Noeller also received a check for lump-sum GUL benefits in the amount of $79,882.05 ($78,400 in principal plus $1,482.05 in interest).

MetLife subsequently learned that law enforcement officers suspected Donna Noeller of causing Wayne Noeller's death. On December 5, 1996, MetLife—evidently aware of the "slayer rule" and potential double liability to the contingent beneficiaries—froze the total control account. Likewise, at MetLife's request, J & H/KVI stopped payment on the GUL benefits check issued to Donna Noeller.[4]

## PROCEDURAL BACKGROUND

After MetLife discontinued payment of insurance benefits, the matter remained stalemated for a period of over two years. However, on May 12, 1998, Donna Noeller employed counsel and sued in the 172nd district court of Jefferson County, Texas, to compel payment of benefits and recover damages. She alleged four state law causes of action: (1) breach of contract; (2) deceptive trade practices; (3) unfair insurance practices; and (4) breach of the duty of good faith and fair dealing.

On June 19, 1998, MetLife timely removed this action to federal court pursuant to 28 U.S.C. § 1441.[5] (*See* Docket No. 1.) MetLife based subject matter jurisdiction on federal question, alleging that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., preempts Donna Noeller's state law causes of action.

Shortly after removal, MetLife filed an answer to Donna Noeller's complaint. Approximately two weeks later, MetLife filed an amended answer, counterclaim, and third-party complaint. The latter two pleadings constituted an interpleader action against Donna Noeller, Estate of Wayne Noeller, Melanie Jones, Melinda Jones, and Alan W. Noeller pursuant to Rule 22 of the Federal Rules of Civil Procedure.[6] (*See* Docket No. 4.)

Under local rules of court, the parties were required to make early, full and voluntary disclosure of all information bearing significantly on each claim and defense contained in the pleadings.[7] Further, local rules required counsel to attend management conferences in September, 1998, and again in November, 1998.[8]

3. According to Mobil Summary Plan Descriptions, a total control account is similar to a money market checking account that earns interest. (*See* Def.'s Mot. for Summ. J., Ex. 1.) MetLife establishes a total control account for each beneficiary when benefits are greater than $10,000. *See id.* A checkbook is then sent to the beneficiary. *See id.* The beneficiary may use the total control account or close the account. *See id.*

4. Life insurance proceeds are payable to the contingent beneficiary if the primary beneficiary willfully slays the insured. *See* 1B JOHN ALAN APPLEMAN AND JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 482 (1981). An insurer's liability is not discharged if the insurer pays the wrong beneficiary. *See* 3 JOHN ALAN APPLEMAN AND JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 1661 (1981). Thus, if MetLife paid benefits to Donna Noeller, MetLife's liability might not be discharged, and MetLife could become doubly liable to the contingent beneficiaries.

5. Notice of removal of a civil action or proceeding shall be filed within thirty days after defendant receives, through service or otherwise, a copy of the initial pleading, or within thirty days after the service of the summons but not the complaint upon defendant and the initial pleading has been filed in state court and is not required to be served on defendant, whichever period is shorter. *See* 28 U.S.C. § 1446(a).

6. An interpleader "allows a stakeholder who is uncertain if and to whom he is liable for money or property held by him to join those who are or might assert claims against him." 7 CHARLES ALAN WRIGHT, ET AL, FEDERAL PRACTICE AND PROCEDURE § 1702 (2d ed.1986).

7. *See* Local Rule CV–26.

8. *See* Local Rule CV–16. Prior to management conferences, litigants are required to complete initial disclosures, obtain depositions of the par-

Following the second management conference, the court ordered that the third parties be interpleaded. Thereafter, MetLife deposited the remaining benefits, plus interest, i.e., $153,960.81, into the court's registry on January 4, 1999. (*See* Docket No. 21; *see also* Def.'s Mot. for Summ. J., Ex. 12.)

On August 6, 1999, approximately fourteen months after removal of the action, MetLife moved for summary judgment. (*See* Docket No. 23.) Specifically, MetLife requested the court to release and discharge MetLife from all claims that may or could be brought by the interpleader defendants against MetLife, and that the court award MetLife reasonable attorney's fees and costs alleged to be in the sum of $13,484.89.

MetLife's request for release and discharge was not contested by any of the interpleader defendants. Thus, partial summary judgment was entered on September 16, 1999. (*See* Docket No. 30.) However, Donna Noeller, through counsel, opposed MetLife's request for attorney's fees. Specifically, Donna Noeller contests the amount of fees sought.

## ARGUMENTS RE: ATTORNEY'S FEES

MetLife requests an award of $13,484.89, representing $11,297 attributable to professional attorney's time and $2,187.89 for out-of-pocket expenses. MetLife attorney's usual and customary hourly fee is $140 per hour, and she submits documentation showing that 81.8 hours of professional time were expended, excluding travel time from Dallas to Beaumont. Counsel's documentation reveals that her services may be categorized roughly as follows:

| Description of Services: | Time Expended: |
| --- | --- |
| Removal of action from state court | 6.1 hours |
| Preparing original answer | 2.2 hours |
| Preparing amended answer & interpleader | 0.8 hours |
| Motion to appear *pro hac vice* | 15.6 hours |
| Preparing disclosures and attending management conferences required by local court rules | 10.3 hours |
| Effecting Service on plaintiff and third party defendants (contingent beneficiaries) | 15.6 hours |
| Motions to deposit funds in court | 2.7 hours |
| Motion for summary judgment | 22.4 hours |
| Total | 81.8 hours |

ties, and prepare a statement reciting elements of all claims and affirmative defenses. *See id.*

Donna Noeller does not oppose an award of attorney's fees, nor does she contest the hourly rate advocated by MetLife's counsel. Further, Donna Noeller concurs with the reasonableness of fees and expenses incurred by MetLife in connection with service on the primary and contingent beneficiaries. Nevertheless, Noeller contends that the remaining amount requested is excessive for several reasons. First, Noeller opposes an award of fees and expenses related to removal of this action to federal court. Noeller argues that MetLife could have filed its interpleader action in state court and obtained identical relief, thus avoiding any costs for removing the action. Second, Noeller argues that the unnecessary expense attendant to removing the case to federal court was further exacerbated due to the early automatic disclosure requirements and the necessity of attending and preparing for management conferences, neither of which would have been required in state court. Since removal was unnecessary to begin with, according to Noeller, no award should be made for these added expenses. Third, Noeller objects to MetLife's travel expenses. Noeller argues that MetLife could have retained competent local counsel instead of hiring Dallas counsel. Finally, Noeller objects that MetLife's request for an award of several thousand dollars for preparation of the essentially uncontested summary judgment motion is patently excessive. In sum, Noeller asserts that an award of only $3,511.20 for professional attorney time and out of pocket costs is warranted.

At oral argument, MetLife's counsel acknowledged that Texas courts entertain interpleader actions, and further conceded that identical relief would have been available in the state court where this action was filed.[9] However, MetLife argues that removal of this action to federal court was appropriate because ERISA preempts the claims asserted in Noeller's original petition, and the need for uniformity of interpretation. Further, MetLife argues that Noeller waived any objection to removal by not asserting it within

9. *See* Tex.R.Civ P. 43.

the time specified by 28 U.S.C. § 1447(c). Inasmuch as removal was appropriate, an award of attorney's fees attributable to compliance with more rigorous federal pretrial procedures is warranted.

Regarding preparation of the motion for summary judgment, MetLife asserts that the amount requested is reasonable due to the special nature of the case. MetLife's counsel argues that in ERISA actions, in order to move for summary judgment, MetLife was required to examine every document in the claim file. Thus, preparing for summary judgment in ERISA cases is comprehensive and lengthy. In addition, MetLife expended additional hours because MetLife does not often encounter the "slayer" issue. Finally, MetLife's counsel argues that MetLife has the right to choose its own counsel and that she does not seek reimbursement for travel time from Dallas to Beaumont.

## DISCUSSION AND ANALYSIS

As earlier noted, MetLife removed this action to federal court on the basis of federal question jurisdiction. MetLife asserted that the state law claims brought by Donna Noeller were preempted by federal law, viz., ERISA. As the case unfolded, however, no federal ERISA issues were contested. Once the case was removed, MetLife filed its interpleader action and deposited remaining Plan and GUL benefits, plus accrued interest, in the registry of the court. All further proceedings related to disposition of that stake. None related to ERISA questions. Therefore, the court addresses the attorney's fees

10. See 28 U.S.C. §§ 1335, 1397, and 2361.

11. See FED R.CIV.P. 22.

12. The reason for this discretion is well-stated in the 1883 case of Louisana State Lottery Co. v. Clark:

In the case before us a mere stakeholder, without fault himself, in possession of a fund claimed entire by contending parties, (but, as the result shows, with equal rights and claims thereto) brings the same into court, thereby promoting the litigation and securing the due application of the property. From the nature of the contending claims and the circumstances of the case he incurs expense and counsel fees in bringing the fund into court.

issue under principles of interpleader jurisprudence.

## A. Authority and Standards for Awarding Attorney's Fees

Although the parties do not dispute Met-Life's entitlement to a reasonable attorney's fee, it is prudent for the Court to first examine sua sponte its authority to award attorney's fees with respect to a successful interpleader action. If such authority exists, it is apropos next to review applicable standards, if any, for attorney fee awards.

Federal interpleader actions are authorized by statutes [10] and also by rules of civil practice and procedure.[11] Attorney's fees and costs are not referenced in either the statutes or the implementing rule. Nevertheless, federal equity courts historically awarded fees to the stakeholder in appropriate cases. See 7 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1719 (2d ed.1986).[12] The Fifth Circuit expressly holds that modern federal courts retain discretion to award attorney's fees and costs to the stakeholder in an interpleader action, whenever it is fair and equitable to do so. See id.; see also Corrigan Dispatch Co. v. Casa Guzman, 696 F.2d 359, 364 (5th Cir.1983).

Generally, courts award attorney's fees and costs to the stakeholder only when the interpleader action is successful.[13] See Murphy v. Travelers Insurance Co., 534 F.2d 1155, 1164 (5th Cir.1976); see also Phillips Petroleum Co. v. Hazlewood, 534 F.2d 61, 63 (5th Cir.1976) (holding that attorney's fees

There is no equity in compelling him to bear these charges. On the contrary, the parties who have benefitted thereby should bear them. 16 F. 20, 21 (C.C.E.D.La.1883).

13. Interpleader actions usually proceed in two stages. In the first stage, the court determines whether interpleader is appropriate on the facts of the case. See 4 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 22.03[1] (3d ed.1999). If so, the court then adjudicates the adverse claims and distributes the stake in the second stage. See id. Generally, an interpleader action is proper if three factors are present: (1) the stakeholder is confronted with multiple adverse claims or liability; (2) claims must be adverse to the stake and to each other; and (3) the court must have in personam jurisdiction over claimants. See id.

may be denied when the interpleader is not a mere stakeholder); *see also* WRIGHT, *supra*, at § 1719 (stating that typically attorney's fees and costs are available "only when the party initiating the interpleader is acting as a mere stakeholder, which means that he has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability."). Moreover, the fee awarded typically will be modest, because "all that is necessary is the preparation of a petition, the deposit in court or posting of a bond, service on the claimants, and the preparation of an order discharging the stakeholder." WRIGHT, *supra*, at § 1719.

In civil rights actions, the Fifth Circuit has articulated specific and elaborate factors for courts to consider when making awards of reasonable attorneys' fees. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974); *see also Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir.1996). Similarly, specific (albeit less elaborate) factors apply in pure ERISA cases. *See Iron Workers Local 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980). In interpleader actions, however, courts apply only the broad rule that an award must be reasonable. *See James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 468 (5th Cir.1971).

■ In the absence of specific court guidance, commentators identify five relevant factors in awarding attorney's fees in interpleader cases. These are:

(1) Whether the case is simple or involved;

(2) Whether the stakeholder performed any unique services for the claimants or the court;

(3) Whether the stakeholder acted in good faith and with diligence;

(4) Whether the services rendered benefitted the stakeholder; and

(5) Whether the claimants improperly protracted the proceedings.

WRIGHT, *supra*, at § 1719; 4 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 22.06 (3d ed.1999).

## B. Application

Application of the specific factors suggested by the commentators does not involve complicated analysis: This was a simple case. The stakeholder performed no unique services for the claimants. The stakeholder acted in good faith and with diligence once there was litigation. The attorney's services benefitted the stakeholder.

The only extraordinary circumstance, perhaps, relates to the fifth factor. Donna Noeller did nothing to protract the proceedings. However, service on the contingent beneficiaries proved to be difficult. Moreover, following service only one of the contingent beneficiaries formally appeared, and even he proceeded *pro se*. This served to protract and complicate the proceedings.[14]

The commentator-proposed factors of analysis, however, do not directly address the crux of the instant controversy. To summarize what was stated earlier, Donna Noeller essentially argues that a federal action was unnecessary to begin with, and that the fees sought for preparing an uncontested motion for summary judgment are exorbitant. MetLife replies that it needed to bring the matter to federal court due to ERISA's preemption, and argues that ERISA motions for summary judgment require extensive preparation and analysis.

Both arguments have merit. Ultimately, ERISA had nothing to do with resolution of the case. However, at the time of removal, several ERISA-preempted state law claims were pending against MetLife. MetLife could not know for sure that the federal preemption issues would never be litigated. Thus, removal to federal court was a natural and expected action.

On the other hand, the initiation of Noeller's state court litigation was a web somewhat of MetLife's own weaving. MetLife

---

**14.** Ultimately, all interested claimants filed with the court a stipulation regarding agreed distribution of net proceeds. (*See* Docket No. 34.) First, Alan Noeller agrees to take $15,000.00. *See id.* Second, Melanie Jones agrees to take nothing. *See id.* Finally, Melinda Jones agrees to take nothing from the proceeds. *See id.* The remaining proceeds will be distributed to Donna Noeller.

simply sat on the stake for over two years. If it intended to make no claim to the stake itself, it could have interpleaded the funds into either state or federal court much earlier. Such proceeding would have been infinitely less complex and less lengthy. Even after litigation was initiated, the interpleader could have been asserted in state court, avoiding the additional rigors and extra expense of federal practice.

■ Because MetLife could have obtained complete relief in state court without compromising its position or risking lack of uniformity in application of ERISA issues, the court concludes that a reduced fee attributable to services performed with respect to removal of the action to federal court, and for complying thereafter with the special and more costly federal court procedures, i.e., moving to appear *pro hac vice*, making formal pretrial disclosures, and attending management conferences. The court's sense of fairness is to award a fee based on 35% of the attorney's time expended on these activities. Total time attributed to these categories was 17.2 hours. At the reduced rate, the court will award $842.80 for these services.

■ MetLife filed an original answer and an amended answer after removing the case to federal court. The answers asserted ERISA preemption defenses that proved to be extrinsic to the case. However, the amended answer also contained the counterclaim and third-party complaint necessary to initiate a successful interpleader and deposit the stake in the court's registry. The court's sense of fairness is to award a fee based on 75% of the attorney's time expended on these activities. Total time attributed to these categories was 26.6 hours. At the reduced rate, the court will award $2,793 for these services.

Under any scenario, service on the primary and contingent beneficiaries would have been necessary and of equal difficulty. The court, therefore, will make an award in full for those hours. Total time attributed to this category was 15.6 hours. At the full hourly rate, the court will award $2,184 for these services.

■ The final major category of professional attorney's time involved preparation of the motion for summary judgment. Whether this action had proceeded in state or federal court, MetLife would have just cause to seek an order discharging it as stakeholder. The court calculates that MetLife seeks reimbursement for 22.4 hours. MetLife's counsel justifies this amount because of the complex nature of ERISA cases.

The court does not agree that this motion was complicated by ERISA issues; nor was the case made complex by the "slayer rule" of which MetLife was aware before any litigation was brought. Moreover, it is not evident that a summary judgment motion was even necessary. The court is aware of no factors that reasonably required MetLife's counsel to do more than simply present an agreed order discharging MetLife from further liability to the primary and contingent beneficiaries. This undoubtedly is what prompted Professors Wright, et al. to observe that typically an attorney's fee in an interpleader case will be modest. *See* WRIGHT, *supra*, at § 1719.

The court's sense of fairness is to award a fee based on 25% of the attorney's time expended on these activities. Total time attributed to this category was 22.4 hours. At the reduced rate, the court will award $784 for these services.

Noeller may also quarrel with out-of-pocket costs on the same basis as she contests amounts sought for attorney's professional time. The court, however, is not inclined to quibble with these items, and will award the full amount, $2,187.89.

## CONCLUSION

Under the foregoing findings and conclusions, MetLife is entitled to an award of $8,791.69 as reasonable attorney's fees and costs. An order to that effect will be entered separately.