# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 7, 2022

Lyle W. Cayce
Clerk

No. 21-20508

John Hancock Life Insurance Company (U.S.A),

*Plaintiff—Appellee*,

*versus*

Estate of Jennifer Lauren Wheatley, c/o Louis A. Wheatley; Administrator Louis Anthony Wheatley,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-cv-02869

Before Clement and Graves, *Circuit Judges*.*

James E. Graves, Jr., *Circuit Judge*:**

This case involves monthly annuity payments by John Hancock Life Insurance Company as part of a decades-old structured settlement between the United States Department of Justice and Jennifer Wheatley. The

---

* This opinion is issued by a quorum pursuant to 28 U.S.C. § 46(d).

** Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

settlement provided Wheatley with three lump sum payments along with monthly payments for her life, or until 2032, whichever was later. The policy designated the United States as the owner and the Estate of Jennifer Wheatley as the sole beneficiary for the monthly payments. It also vested the United States with sole authority to modify the beneficiary designation. When Wheatley died, John Hancock failed to pay her Estate and instead sent the monthly payments to Wheatley's ex-husband Jeremy Ward. After several months and multiple letters from Wheatley's Estate asserting its status as the annuity's sole beneficiary, John Hancock ceased all payments and filed an interpleader action to determine the proper beneficiary.

Because John Hancock filed an interpleader action despite the annuity's clear designation of the Wheatley Estate as beneficiary—which the United States had not modified—the district court abused its discretion in awarding attorneys' fees. We reverse this award and remand for further proceedings consistent with this opinion. However, we affirm the district court's pretrial rulings.

## FACTUAL BACKGROUND

### I. The Annuity

On January 1, 1988, John Hancock Life Insurance Company ("John Hancock"), previously known as Manufacturers Life Insurance Company, issued an annuity to the United States of America as part of a structured settlement between the United States Department of Justice and Jennifer Wheatley ("Wheatley"). The annuity included two types of payments: (1) guaranteed monthly payments beginning in 2003 when Wheatley turned eighteen; and (2) three lump sum payments paid in 1992, 1997, and 2002.[1]

---

[1] This appeal does not concern the lump sum payments.

The monthly payments were set to continue until Wheatley died or, if she died before December 10, 2032, the payments would be paid to her beneficiary. The annuity designated the executors or administrators of Wheatley's estate as the primary beneficiaries for the monthly payments.

The annuity states that "[d]uring the annuitant's lifetime you can change the beneficiary; you must give us notice in written form satisfactory to us." The annuity defines "you" as "the owner of the policy." The first page of the annuity indicates that the owner is the United States of America, and the parties do not contest ownership.

In December 2008, Wheatley submitted a change of beneficiary form to John Hancock on a life insurance beneficiary designation form. She listed her then-husband Jeremy Ward ("Ward") as the primary beneficiary and the secondary beneficiary as her mother-in-law, Annie R. Hall. On January 15, 2009, John Hancock sent a letter to Wheatley confirming the changes. Wheatley and Ward subsequently divorced.

Unfortunately, Wheatley died on October 18, 2017. John Hancock received competing claims from Wheatley's Estate (the "Estate") via Louis Wheatley, Wheatley's father and the Estate's administrator; and Ward, Wheatley's ex-husband, for the remaining monthly annuity payments. The competing claims came many months apart, however.

On November 1, 2017, Louis Wheatley sent notice of Wheatley's death and requested that John Hancock suspend its automatic monthly payments to Wheatley's bank account. Over the next few months, Louis Wheatley sent multiple letters to John Hancock trying to ascertain the process for having the payments transferred to the Estate as required under the original agreement. The letters are summarized as follows:

- On November 15, 2017, Louis Wheatley requested the change of ownership forms from John Hancock.

No. 21-20508

- On January 15, 2018, he sent a second copy of Wheatley's death certificate and an estate administration notice.
- On February 26, 2018, after hearing nothing from John Hancock, Louis Wheatley requested a response. He stated that the annuity was required to "pay the payments to the beneficiary's estate" and any remaining payments should be paid "at least as rapidly as under the method of payment in effect" at the time of Wheatley's death (i.e., direct deposit).
- On March 8, 2018, John Hancock notified Louis Wheatley that the Estate was not the beneficiary and would not receive any benefits.
- On March 20, 2018, Louis Wheatley requested the individual's name that had been deemed as beneficiary because Wheatley "was not married, nor had any children."
- On March 28, 2018, John Hancock stated that "there is a designated beneficiary on file, as requested by the Annuitant" and "the Estate is not due any benefit." It also reiterated that it would not provide the name of the beneficiary.
- On April 9, 2018, Louis Wheatley again requested the beneficiary's name and an explanation as to how John Hancock had determined that individual's status. He also stated that Wheatley had been divorced since July 26, 2012.
- On April 10, 2018, John Hancock again stated that the beneficiary, whose name it would not disclose, "was designated by the annuitant" and "the Estate is not due any benefit."
- On April 16, 2018, Louis Wheatley stated his disagreement with John Hancock's refusal to identify the beneficiary. He asserted that the annuity was not owned by Wheatley but by the United States Department of Justice and that only the United States could approve a beneficiary change.

No. 21-20508

Sometime in May 2018, John Hancock received a claim from Wheatley's ex-husband Ward stating he was the annuity beneficiary. On May 16, 2018, John Hancock sent $12,468.06 to Ward for the outstanding payments between November 2017 and May 2018. On June 2, 2018, and July 2, 2018, John Hancock paid monthly annuity payments of $1,800.94 to Ward. In total, John Hancock paid Ward $16,069.94.

On July 11, 2018, counsel for the Estate again notified John Hancock that Wheatley and Ward were divorced and included a copy of the divorce decree. Counsel requested the name of the individual John Hancock viewed as the beneficiary so Wheatley's Estate could properly determine its outstanding assets. Only at this point did John Hancock suspend monthly payments to Ward. Ward's counsel then requested "documentation and correspondence that prompted the decision to place a hold on the payments." So on August 20, 2018, John Hancock filed an interpleader action to resolve the competing claims between the Estate and Ward. John Hancock named the United States, the Estate, and Ward as defendants.

## II. District Court Proceedings

The Estate, Ward, and John Hancock filed cross claims, counterclaims, and numerous motions before the district court. As is relevant to this appeal, the Estate challenges the district court's denial of its motions to add a fifth counterclaim and to amend the scheduling order. It also challenges the district court's denial as moot of John Hancock's motion for a protective order.

This case began as an interpleader filed by John Hancock to resolve whether Ward or the Estate was entitled to Wheatley's annuity payments. On November 12, 2019, the district court granted summary judgment for the Estate after the Estate successfully argued that Wheatley's 2008 attempt to change the beneficiary to Ward was invalid. In this order, the court also

granted the Estate's motion to revive its previously dismissed counterclaims[2] against John Hancock, including for breach of contract, so it could pursue "recovery of funds that John Hancock already remitted to Ward prior to the present interpleader action." The court also permitted the Estate to add a fourth cause of action for violations of Texas Insurance Code § 542.058.

On January 10, 2020, the Estate filed a motion to again amend its counter-complaint against John Hancock to add a fifth counterclaim for alleged violations of Massachusetts state law for "unfair claim settlement practices" or, in the alternative, Texas Insurance Code §§ 542.058, 542.06, and 541.051. The district court's scheduling order deadline for amending the pleadings had expired ten months prior, on March 1, 2019. On January 27, 2020, the Estate served John Hancock with a third round of discovery related to the proposed fifth counterclaim. However, because the deadline for discovery was August 1, 2019, John Hancock moved for a protective order. The Estate then requested an amendment to the scheduling order. The initial scheduling order had been modified previously only once to extend the deadline to file dispositive motions, but no other deadlines, including amendment and discovery deadlines, had been altered.

On March 16, 2020, the Estate moved for partial summary judgment on its breach of contract counterclaim against John Hancock. Based on its November 2019 determination that the Estate was the beneficiary under the annuity, the district court granted summary judgment for the Estate finding that it was "entitled to the payments improperly disbursed to Ward in the amount of $16,069.94 plus interest." The district court dismissed the Estate's remaining counterclaims.

---

[2] These counterclaims had been dismissed in a minute order entry on the docket on March 14, 2019.

On May 24, 2020, the district court denied the Estate's January 10, 2020, motion to amend to add a counterclaim and its March 6, 2020 motion to modify the scheduling order, specifically finding that the Estate had not demonstrated good cause for leave to amend and that John Hancock would be "steep[ly]" prejudiced if leave were granted. Because no amendments would be allowed, the court then denied as moot John Hancock's motion for a protective order.

John Hancock filed a motion for attorneys' fees for its work on the interpleader action. On September 22, 2020, the district court granted in part John Hancock's request, stating that it could recover 34.7 hours spent on the interpleader action and the time it spent defending several motions filed by the Estate. The district court awarded John Hancock $32,179.55 in attorneys' fees.

## DISCUSSION

### I. Attorneys' Fees

Although not required under the interpleader statute or the Federal Rules of Civil Procedure, "[i]t is well settled that a district court has the authority to award costs, including reasonable attorney's fees, in interpleader actions." *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983). Awarding costs is a matter of judicial discretion. *Phillips Petroleum Co. v. Hazlewood*, 534 F.2d 61, 63 (5th Cir. 1976). The following factors are used in deciding whether to award fees to an interpleader: "(1) whether the case is simple; (2) whether the interpleader-plaintiff performed any unique services for the claimants or the court; (3) whether the interpleader-plaintiff acted in good faith and with diligence; (4) whether the services rendered benefited the interpleader-plaintiff; and (5) whether the claimants improperly protracted the proceedings." *See Royal Indem. Co. v. Bates*, 307 F. App'x 801, 806 (5th Cir. 2009) (citing 7 Charles Alan Wright, Arthur R.

Miller, & Mary Kay Kane, Federal Practice and Procedure § 1719 (3d ed. 2001)).

A district court can abuse its discretion by awarding attorneys' fees to an interpleader-plaintiff who is in "substantial controversy with one of the claimants." *Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999). And where an interpleader-plaintiff is "in part responsible for causing [the] litigation" and "in part responsible for protracting [the] litigation," a district court's award of fees is an abuse of discretion. *Royal Indem. Co.*, 307 F. App'x at 806.

## A. Substantial Controversy

The record indicates that substantial controversy existed between John Hancock and Wheatley's Estate. The Estate sent multiple letters to John Hancock informing it that Wheatley had died, her father was the executor, and, as the beneficiary, the Estate was requesting prompt payment. John Hancock's first response, which occurred more than three months after the Estate's first letter, merely stated that the Estate was not the beneficiary and no further action was required.

Later, when the Estate sought to clarify the beneficiary's identity, given that Wheatley was not married and had no children, John Hancock provided no additional details, nor did it indicate that it had reviewed the annuity or the beneficiary designation form to confirm the designation. Had it reviewed the 2008 change of beneficiary form, John Hancock might have recognized its error. Not only was the form for a life insurance policy, but it was from Wheatley—not the United States—who could not reassign the beneficiary. Finally, in April 2018, when the Estate cited the annuity's provision that only the United States could change the beneficiary designation, John Hancock still did not pay the Estate any benefits.

While these facts highlight the substantial controversy between John Hancock and the Estate, perhaps most telling is that, in May 2018, when John

No. 21-20508

Hancock received a claim from Ward, it took immediate steps to pay him the accrued benefits along with payments for June and July 2018. Only after receiving a letter from counsel for the Estate did John Hancock suspend payments to Ward. John Hancock opposed the Estate's efforts to recover but supported Ward's delayed claim by offering prompt payment. *See Hazlewood,* 534 F.2d at 63 (affirming the denial of attorneys' fees for an interpleader-plaintiff where the interpleader-plaintiff "actively took a position opposing" one claimant and "supporting the claims" of the other).

### B. Responsibility for the Litigation

Next, John Hancock was—at a minimum—"in part responsible for causing" and "in part responsible for protracting" the litigation. *Royal Indem. Co.*, 307 F. App'x at 806. At any point, had John Hancock reviewed the 6-page annuity, the following would have quickly become apparent: (1) the United States owned the annuity; (2) Wheatley's Estate was the beneficiary upon Wheatley's death; (3) only the owner, the United States, could change the beneficiary designation. Yet, John Hancock told the Estate that "there is a designated beneficiary on file, *as requested by the Annuitant*" and the beneficiary "was designated *by the annuitant*" (emphasis added). But this could not have been the case under the express terms of the annuity. Thus, Wheatley's 2008 attempted change of beneficiary—which was the only attempted change of beneficiary—was invalid, leaving the Estate as the only possible beneficiary. It is unclear why John Hancock was confused.

Even though it had to look no further than its own documents, John Hancock filed an interpleader action to establish the proper beneficiary. While the district court credited John Hancock for its "efforts to encourage settlement with the Defendants," this ignores the fact that John Hancock initiated litigation that, at its base, simply required the untangling of John Hancock's own errors.

9

And although the district court resolved the interpleader action in favor of the Estate in November 2019, the Estate still had to move for partial summary judgment on its breach of contract counterclaim to establish it was entitled to the payments that John Hancock made to Ward. On May 28, 2020, the district court granted summary judgment noting that the Estate was "entitled to the payments improperly disbursed to Ward in the amount of $16,069.94 plus interest." To the extent John Hancock encouraged settlement, its failure to settle the breach of contract claim—despite knowing that the Estate was the proper beneficiary—protracted litigation.

Regardless, the factors for awarding attorneys' fees do not support John Hancock. As detailed above, this case was simple, and John Hancock did not perform any unique services either for the claimants or the court. While it is arguable whether John Hancock benefitted from the interpleader, even assuming it did, the actions that led to this interpleader nonetheless show its lack of diligence. And while John Hancock argues that the claimants protracted the litigation, we cannot ignore that John Hancock knew of the Estate's claim to the payments for months before it received Ward's claim yet failed to recognize the validity of the claim. Lastly, as the district court noted, the dispute over the $16,069.64 paid to Ward lingered for months after the district court established the Estate's entitlement to the annuity payments. We cannot conclude that the Estate "improperly protracted" litigation such that fees are warranted for John Hancock. *See Royal Indem. Co.*, 307 F. App'x at 806 (citation omitted).

Rewarding John Hancock for resolving a self-created problem that resulted in years of litigation would undermine the validity of necessary and appropriate interpleader actions. The district court abused its discretion in awarding attorneys' fees to John Hancock as interpleader-plaintiff.

No. 21-20508

## II. Pretrial Motions

"The court may permit a party to amend a pleading to add a counterclaim if it was omitted through oversight, inadvertence, or excusable neglect or if justice so requires." FED. R. CIV. P. 13(f). Allowing a party to amend a pleading to add a counterclaim is a matter of judicial discretion. *Rohner, Gehrig & Co. v. Cap. City Bank*, 655 F.2d 571, 576 (5th Cir. Unit B Sept. 1981). We review for abuse of discretion. *Id.*

The district court held that the Estate had not demonstrated good cause for amending its pleadings to add the proposed fifth counterclaim. To support this determination, it noted that the Estate did not explain its delay in seeking leave to amend and that the Estate had previously sought to amend to add counterclaims. At no point did the Estate seek to extend the deadline to amend before its expiration, and it delayed two months after the court deemed it the proper beneficiary before seeking to add a fifth counterclaim. The district court also noted that it was "unclear the extent to which" the Estate's purported additional discovery "provided new information" related to the counterclaim, and regardless, the Estate had waited for months after obtaining this discovery to seek leave to amend.

On appeal, the Estate asserts the district court abused its discretion because the March 2019 amendment deadline could not "rationally be applied to issues which could not be raised until the annuity entitlement issue was resolved." Liberally construed, the Estate argues that its fifth counterclaim could only have been raised after its entitlement to the funds was established. However, the Estate provides no authority for its position, so this argument is waived. *See* FED. R. APP. P. 28(a)(8)(A) (stating that the appellant's brief must contain its "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). But, at minimum, because the Estate does not explain its delay

11

between (1) when it received new discovery; (2) when it was deemed as the beneficiary; and (3) when it sought leave to amend, the district court did not abuse its discretion in denying the motion.

Next, a district court's denials of motions to modify the scheduling order or to reopen discovery are also reviewed for an abuse of discretion. *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 488 (5th Cir. 2002); *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 735 (5th Cir. 2010).

The Estate argues that the district court should have provided updated guidance on all Rule 16 deadlines when it modified the scheduling order to extend the deadline for dispositive motions and that its failure to allow subsequent modifications was an abuse of discretion. Again, the Estate fails to cite authorities or explain its reasoning other than asserting that the modification left "the parties in the awkward position of having to guess what time would be sufficient." This is insufficient to preserve an argument. *See L & A Contracting Co. v. S. Concrete Servs., Inc.,* 17 F.3d 106, 113 (5th Cir. 1994) (finding an issue not adequately briefed where no authorities were cited in a one-page argument). Regardless, we afford the district court's modification of scheduling orders "a great deal of deference," and its decision to not modify the scheduling order, particularly in the absence of the Estate's showing of good cause and the likelihood of prejudice to John Hancock, was not an abuse of discretion. *Bilbe v. Belsom,* 530 F.3d 314, 317 (5th Cir. 2008). A district court is not required to update all deadlines when it modifies one portion of the scheduling order. Finally, as discussed above, we see no abuse of discretion in the court's denial of leave to amend to add a counterclaim, so

No. 21-20508

we likewise find no abuse of discretion in its denial as moot of the protective order related to discovery for the counterclaim.[3]

In sum, the district court did not abuse its discretion as it relates to the Estate's motion for leave to add a counterclaim, its motion to amend the scheduling order, or the dismissal as moot of John Hancock's related motion for a protective order.

## CONCLUSION

For the reasons discussed, the district court abused its discretion when it awarded attorneys' fees to John Hancock. However, it did not abuse its discretion in its rulings on the various pretrial motions.

AFFIRMED in part; REVERSED in part; and REMANDED.

---

[3] Again, this conclusion is premised upon the Estate having raised the protective order issue in its briefing, which it only does briefly in the Issues Presented and Summary of Argument sections. Without any citations or other analysis, this argument is waived.