948 F.2d 910
 Bankr. L. Rep. P 74,379
LANDMARK LAND COMPANY, INC., et al., Plaintiffs-Appellees,
v.
OFFICE OF THRIFT SUPERVISION, a Bureau Within the United
States Department of the Treasury, and Timothy
Ryan, Director, Defendants-Appellants.
In re DIRECTOR, OFFICE OF THRIFT SUPERVISION, Petitioner.
 Nos. 91-3930, 91-3931.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 26, 1991.
 
 Brian C. McCormally, Gary Anderberg, Dallas, Tex., Aaron B. Kahn, Laurie Romanowich, Office of Thrift Supervision, Washington, D.C., for Office of Thrift Supervision, et al.
 Terence M. Murphy, Gary Sarles, Jones, Day, Reavis & Pogue, Dallas, Tex., Dando B. Cellini, Craig L. Caesar, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., for Landmark Land Co., Inc., et al., in No. 91-3930.
 Brian McCormally, Sr. Deputy Chief Counsel, Gary Anderberg, Senior Enforcement Counsel, Office of Thrift Supervision, Dallas, Tex., Aaron B. Kahn, Office of Thrift Supervision, Laurie Romanowich, Office of Thrift Supervision, Washington, D.C., for Director.
 Dando B. Cellini, Craig L. Caesar, Dermot S. McGlinchey, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., Terence M. Murphy, Jones, Day, Reavis & Pogue, Dallas, Tex., Marcel Livaudais, Jr., U.S. Dept. of Justice, New Orleans, La., for Landmark Land Co., Inc., et al., in No. 91-3931.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Petition for Writ of Mandamus to the United States District Court for the Eastern District of Louisiana.
 Before JOLLY, DAVIS, and SMITH, Circuit Judges.
 JERRY E. SMITH, Circuit Judge:
 
 
 1
 In No. 91-3931, we are faced with a question of first impression: Whether, pursuant to 28 U.S.C. § 1404(a), an action initiated under 12 U.S.C. § 1818(c)(2) challenging a cease-and-desist order issued by the Office of Thrift Supervision ("OTS") can be transferred to a district other than those set forth in section 1818(c)(2). On the basis of the restriction contained in 12 U.S.C. § 1818(i)(1), we answer the question in the negative.
 
 I.
 
 2
 Oak Tree Savings Bank, F.S.B., of New Orleans, Louisiana ("Oak Tree"), is a federal mutual savings association chartered by OTS on October 13, 1991. Also on that date, OTS appointed the Resolution Trust Corporation ("RTC") as the receiver for Oak Tree's state-chartered predecessor, Oak Tree Savings Bank, S.S.B. ("Old Oak Tree"). Old Oak Tree was wholly owned by Landmark Land Company, Inc., a savings and loan holding company operating pursuant to 12 U.S.C. §§ 1467a(a)(1)(D), 1813(w)(3), and 1818(b)(8). At the time of the appointment, most or all of Old Oak Tree's assets were transferred to Oak Tree.
 
 
 3
 The OTS avers that on approximately October 11, 1991, Landmark Land Company, Inc., and certain persons connected with it who also are officers and/or directors of certain subsidiaries of Old Oak Tree ("the subsidiaries") and/or of Old Oak Tree (collectively "Landmark") caused or permitted the subsidiaries to file chapter 11 bankruptcy petitions in the bankruptcy court of the United States District Court for the District of South Carolina. OTS placed Old Oak Tree in receivership on October 13 as a result of the bankruptcy filings, as OTS asserts that the subsidiaries owed Old Oak Tree in excess of $900 million and that the pursuit of bankruptcy proceedings impaired OTS' ability to collect from Old Oak Tree the sums owed.
 
 
 4
 Also on October 13, and as authorized by 12 U.S.C. § 1818(b) and (c), OTS issued a temporary cease-and-desist order against Landmark directing it, inter alia, to withdraw the bankruptcy petitions. A few days later, Landmark brought an action in the United States District Court for the Eastern District of Louisiana seeking to have the cease-and-desist order set aside, limited, or suspended as provided in section 1818(c)(2).
 
 
 5
 On November 1, 1991, the Louisiana district court, at a hearing called to consider Landmark's motion for preliminary injunction, enjoined the cease-and-desist order and announced sua sponte that it was transferring the action to the District of South Carolina. OTS immediately filed the instant petition for writ of mandamus (No. 91-3931) seeking to have the transfer order vacated. In No. 91-3930, OTS appeals the injunction.
 
 II.
 
 6
 In support of its mandamus petition, OTS argues that the transfer is erroneous as a matter of law because the South Carolina court lacks jurisdiction. As OTS observes, the Louisiana district court apparently relied upon 28 U.S.C. § 1404(a) as its authority for the transfer. That section allows a district court to transfer an action only to "any other district or division where [the action] might have been brought."
 
 
 7
 OTS argues that Landmark's challenge to the cease-and-desist order could not have been brought originally in the District of South Carolina. Section 1818(c)(2) in fact does limit the venue of such actions to "the United States district court for the judicial district in which the home office of the depository institution is located, or the United States District Court for the District of Columbia." The parties agree that the South Carolina court satisfies neither of those conditions. Thus, OTS contends that, as Landmark's action could not have originated in South Carolina, section 1404(a) proscribes its being transferred to that court.
 
 
 8
 Landmark counters by asserting that the issue may be one of venue, not jurisdiction, and that section 1818(c)(2) "can be considered a special venue statute ... analogous to the special venue statute in the Jones Act, 46 U.S.C. § 688," which, Landmark avers, was held in Pure Oil Co. v. Suarez, 384 U.S. 202, 203, 86 S.Ct. 1394, 1395, 16 L.Ed.2d 474 (1966), to refer to venue, not jurisdiction. As a like example, Landmark cites 12 U.S.C. § 1818(f), a provision similar to section 1818(c)(2) that was held to be a special venue statute in Belgiovine Enters. v. City Fed. Sav. Bank, 748 F.Supp. 33, 34 n. 4 (D.D.C.1990).
 
 
 9
 Landmark also observes that Congress specifically has vested in all United States district courts concurrent bankruptcy jurisdiction over proceedings related to cases under title 11. In this regard, Landmark points to 28 U.S.C. § 1334(b), which provides that "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."
 
 
 10
 Landmark notes that the proper venue for such related proceedings is fixed by 28 U.S.C. § 1409(a), which reads, "Except as otherwise provided in [inapplicable] subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." From this, Landmark reasons that, as several related cases are pending under title 11 in the District of South Carolina, and notwithstanding any other statutory provision, that court has jurisdiction over any proceeding "related to" the bankruptcy cases pending before it under section 1334(b) and thus is a legitimate transferee court under section 1404(a).
 
 
 11
 Remarkably, however, Landmark fails to mention the statutory provision upon which OTS principally relies for its assertion that the South Carolina court can have no concurrent jurisdiction over this matter as a transferee court. Section 1818(i)(1), importantly, states that "except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order." On its face, and standing alone, this provision patently deprives the South Carolina court of any jurisdiction--as a transferee court or otherwise--over this matter. The obvious interpretive problem, though, is that section 1334(b) grants the district courts concurrent jurisdiction over cases arising under title 11 or arising in or related to cases under title 11.
 
 
 12
 One answer to this dilemma is that we apply the basic principle of statutory construction that "[a] specific provision controls over one of more general application." Gozlon-Peretz v. United States, --- U.S. ----, 111 S.Ct. 840, 848, 112 L.Ed.2d 919 (1991) (citing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987)). Obviously, section 1818(i)(1) is the more specific provision, dealing with a narrow category of administrative supervision, while section 1334(b) encompasses bankruptcy proceedings in general. By this analysis, section 1818(i)(1) trumps section 1334(b).[1]
 
 
 13
 Our view is confirmed by the recent opinion of this court in MCorp Fin., Inc. v. Board of Governors, 900 F.2d 852 (5th Cir.1990), cert. granted, --- U.S. ----, 111 S.Ct. 1101, 113 L.Ed.2d 212 (1991) (argued Oct. 7, 1991). There, the Board of Governors of the Federal Reserve System (the "Board") appealed an order of the district court, sitting in bankruptcy, enjoining the Board from pursuing certain enforcement actions against the subject bank. We vacated the injunction on the ground that under section 1818(i)(1) the district court lacked subject matter jurisdiction to interfere with the administrative action.
 
 
 14
 In MCorp, the bank argued that section 1334(b) supersedes the Board's exclusive jurisdiction under section 1818(i)(1) to prosecute its enforcement actions. We concluded, however, that section 1334(b) merely was intended "to prevent another court from exercising jurisdiction over a matter brought within the Bankruptcy Code." Id. at 855. Thus, as we explained, section 1334(b) was designed to give a bankruptcy court the power to adjudicate matters involved with the bankruptcy proceeding before it without being "limited by the concepts of possession and consent" under prior bankruptcy law. Id.
 
 
 15
 The point of MCorp, then, is that a court other than the bankruptcy court in which the matter is pending should not have jurisdiction over part of the bankruptcy dispute to the exclusion of that bankruptcy court. That is what is meant by the MCorp panel's explanation that "it was this division of jurisdiction between bankruptcy courts and other courts which [section 1334(b) was] intended to address." Id.
 
 
 16
 Here, as we have explained, the cease-and-desist proceeding does not directly involve the debtor's chapter 11 case. Hence, the "division of jurisdiction between bankruptcy courts and other courts" referred to in MCorp is not implicated in the case sub judice. Where no conflict is present between two courts considering a bankruptcy matter, the MCorp court notes that section 1334(b) is not intended to "reinvest the courts with jurisdiction barred by § 1818." Id.
 
 
 17
 A contrary interpretation would "invest[ ] the district court, sitting in bankruptcy, with equitable power withheld from every other court by the language of § 1818(i)." Id. Such implied repeal, according to the MCorp court, cannot be inferred here, as sections 1334(b) and 1818(i) are not in irreconcilable conflict. Id. at 855-56. "Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action." MCorp, id. at 856 (quoting Board of Governors v. Dimension Fin. Corp., 474 U.S. 361, 373-74, 106 S.Ct. 681, 688-89, 88 L.Ed.2d 691 (1986)).
 
 
 18
 Finally, the bank in MCorp argued that section 1334(b) should supersede section 1818 because section 1334(b) was enacted after section 1818. We rejected this assertion, noting that "[a]bsent some clear intention to the contrary, however, a specific statute will not be controlled by a general one regardless of the priority of enactment." Id. at 856 (citing Crawford Fitting). "Congress revealed no intent to supersede the specific jurisdictional bar of § 1818(i).... We decline to imply any affirmative powers to the bankruptcy court from Congress' failure to act in this area." Id. at 857.
 
 
 19
 Accordingly, we conclude that, as the instant proceeding does not directly involve the bankrupt estates being adjudicated in South Carolina, section 1818(i)(1) is a bar to jurisdiction by the South Carolina court, and it cannot be a transferee court under section 1404(a). The result is that the Louisiana district court erred as a matter of law in attempting to transfer this proceeding. We do not find it necessary, however, to issue a writ of mandamus, as we are confident that the able district court will vacate its order of transfer in light of this opinion. We have stayed the transfer order pending the resolution of this matter; the stay shall remain in effect until such time as the transfer order is vacated.
 
 III.
 
 20
 In No. 91-3930, OTS has filed an appeal from the order of the district court enjoining the cease-and-desist order. Before us, as an administrative panel, is OTS's motion to stay that order pending appeal. The motion is denied without prejudice. OTS has not made an adequate showing of irreparable harm, i.e., of harm that cannot be undone if the order of the district court is reversed on appeal, following full briefing and any argument. Moreover, although we express no view on the merits, OTS has not made, at this point, a sufficient showing of likelihood of success on the merits to warrant a stay pending appeal. See Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987).
 
 IV.
 
 21
 In summary, in No. 91-3931, the petition for writ of mandamus is DISMISSED without prejudice, and this matter is remanded for further appropriate proceedings. In No. 91-3930, the motion for stay pending appeal is DENIED without prejudice.
 
 
 
 [1]
 OTS also argues that the instant proceeding, involving only the judicial review of an administrative cease-and-desist order, is not "related to" the bankruptcy proceedings. OTS observes that no order properly issued in this case conceivably can affect the bankruptcy estates and that none of the parties in the instant case is bankrupt. We find it a close question as to whether this matter is "related to" the bankruptcy matters, in the ordinary sense of the word "related." After all, the cease-and-desist order required Landmark, inter alia, to withdraw the bankruptcy petitions. In light of our determination, supra, that § 1818(i)(1) supersedes § 1334(b), we need not resolve this issue