# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 97-20819

ROBERT E. RHOADES, Trustee for the FirstBanc Savings
Association Employee Stock Ownership Plan,

Plaintiff-Appellee,

versus

MICHAEL E. CASEY; ET AL.,

Defendants,

MICHAEL E. CASEY,

Defendant-Counter Claimant-Appellant,

versus

THE TEXAS SAVINGS AND LOAN DEPARTMENT; KATHY BARNES;
VIVIAN WECHIE,

Defendants-Appellees,

and

THE OFFICE OF THRIFT SUPERVISION,

Defendant-Counter Defendant-Appellee.
*************************************************************************
DIRECTOR OF THE OFFICE OF THRIFT SUPERVISION,
US DEPARTMENT OF THE TREASURY,

Plaintiff-Appellee,

versus

MICHAEL E. CASEY,

Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Texas

December 3, 1999

Before KING, Chief Judge,  SMITH, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Defendant-Appellant Michael E. Casey appeals the district court's grant of summary judgment in favor of the Office of Thrift Supervision and the Texas Savings and Loan Department. The appellant also challenges the district court's order which distributed the disputed retirement benefits to other retirement plan participants, and the award of attorney's fees to Plaintiff-Appellee Robert Rhoades. For the following reasons we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from a complicated set of factual and procedural circumstances. Michael E. Casey ("Casey") was the first president and chief executive officer of FirstBanc. FirstBanc's Employees Stock Ownership Plan ("ESOP") was established May 1, 1987. Casey was the plan's trustee and an ESOP participant.

In 1991, the Office of Thrift Supervision ("OTS") and the Texas Savings and Loan Department ("TSLD") raised questions regarding the administration of the FirstBanc ESOP. The OTS and TSLD commenced a formal examination of FirstBanc and the FirstBanc ESOP. The agencies investigated to determine whether Casey had committed violations of banking regulations, breached fiduciary duties, and engaged in unsafe or unsound banking practices. These investigations led to settlement negotiations between OTS, TSLD and Casey. In order to avoid the initiation of administrative litigation against him by OTS and TSLD on June 21, 1993 Casey entered into two separate consent agreements titled Stipulation and Consent to Issuance of Order to Cease and Desist ("consent agreements") with OTS and TSLD respectively. In the consent agreements signed by Casey, he assented to issuance of the cease and desist orders ("cease and desist orders" or "orders"). These consent agreements further stated that Casey agreed to comply with the cease and desist orders that would be forthcoming from OTS and TSLD. Casey also stipulated that the orders complied with all requirements of law. The consent agreements clearly explained that the cease and desist orders were final orders, effective, and fully enforceable by the agencies. Casey also waived his right to seek judicial review of the orders or to otherwise challenge the validity of the order.

The cease and desist orders issued by OTS and TSLD were comprehensive. The orders stripped Casey of his association with FirstBanc as a director and of his position as trustee of the ESOP. Most importantly for this appeal, the orders stated that Casey would waive his rights and interests in his ESOP benefits. The OTS order stated in part, "Casey shall forfeit, waive, and release any ESOP benefits, interests, distribution or claim for ESOP benefits, interests, and distributions."[1] In April 1995, over two years after the consent agreements were signed and the orders had been issued, the OTS Midwest Regional director sent a letter to Casey requesting that he execute a waiver of his ESOP benefits as required by the order. Casey, responding to the letter through counsel, refused to execute the waiver.

In August 1995, Robert Rhoades, the new trustee of the FirstBanc ESOP, dissolved the FirstBanc ESOP. At that time, Rhoades distributed the ESOP funds to the ESOP participants or their beneficiaries. OTS and TSLD wrote to Rhoades and reminded him of the orders in place against Casey and asserted that Casey's ESOP benefits were subject to the orders which required Casey to forfeit and waive his benefits. Casey also contacted Rhoades and disputed the validity of the orders. Casey requested that Rhoades release and distribute to him his portion of the ESOP fund.

On November 1, 1995, Rhoades filed an interpleader action, and subsequently deposited into the Registry of the Court the $77,064.04 in dispute. OTS, TSLD, Casey, and all of the other ESOP plan participants were named as defendants in the interpleader action. This interpleader action was filed in the U.S. District Court for the Southern District of Texas and was assigned to Judge Vanessa Gilmore.

One month later in December 1995, OTS filed a Complaint for Enforcement of Order ("enforcement complaint") in the U.S. District Court for the Southern District of Texas and it was assigned to Judge David Hittner. The enforcement complaint named Casey as the defendant and stated that pursuant to 12 U.S.C. § 1818(I)(1) OTS was entitled to enforcement of the outstanding

---

[1] The TSLD order contained virtually the same language except it stated that Casey would "hereby" waive his ESOP benefits.

final order, including obtaining an order from the district court directing Casey to waive his ESOP benefits. On April 23, 1996 OTS filed an unopposed motion to consolidate the Rhoades interpleader action and the OTS enforcement complaint. On April 26, 1996 Judge Gilmore signed an order granting OTS's motion to consolidate the cases.

On February 28, 1997 OTS, TSLD and Casey filed motions for summary judgment. On the same day Rhoades filed a motion for discharge as plaintiff in the interpleader action and for attorney's fees. On April 23, 1997, the district court granted OTS and TSLD's motions for summary judgment denying Casey's motion for summary judgment. The district court also granted Rhoades' motion for attorney's fees. The district court refused to discharge Rhoades as a plaintiff until the court entered a final order distributing the ESOP benefits that were in the court's registry. On June 3, 1997, the district court entered an order that distributed the funds held in the court registry as follows : $23, 955.21 to Rhoades in attorney's fees, and the remaining $53, 108.83 plus all accrued interest to be distributed to the ESOP participants in the same proportion as the previous disbursements made by Rhoades.[2]

In the district court's order granting summary judgment the court stated that the clear language of 12 U.S.C. § 1818(i)(1) defined the district court's jurisdiction to only allow the court to enforce the OTS order, and that a district court should not review or modify the terms of an OTS order. The district court also found that even if it had jurisdiction to modify or rescind the OTS order, the OTS order did not violate the anti-alienation provisions of ERISA. In regards to the TSLD order the district court held that Casey was barred by res judicata from collaterally attacking the TSLD order. The district court further found that the Texas statutes which empowered TSLD to regulate state-chartered savings associations were not preempted by ERISA.

DISCUSSION

---

[2] On June 19, 1997 Casey filed a pleading styled as a motion for new trial. On March 29, 1998 the district court denied Casey's motion for new trial because it was untimely, coming after the ten day period set forth in F.R.Civ.P. 59(e).

Casey argues on appeal that the district court erred in finding that it did not have jurisdiction to consider his defense to the OTS order, and also erred in finding that the OTS order did not violate the anti-alienation provisions of ERISA. Casey also challenges the district court's finding that res judicata bars his challenge to the TSLD order, and that the TSLD order is not preempted by ERISA. Finally, Casey argues that the district court abused its discretion in awarding Rhoades attorney's fees because Rhoades was not a disinterested stakeholder as required to receive attorney's fees in an interpleader action. We will consider each of these issues in turn.

## A.    OTS Order

This court reviews a grant of summary judgment de novo. See Rivers v. Central and South West Corporation, 186 F.3d 681, 682 (5th Cir. 1999). Summary judgment is appropriate, when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists. See Celotex Corp. v. Cartrett, 477 U.S. 317, 322-324, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).

### 1.  District Court's Jurisdiction under 12 U.S.C. § 1818

The district court granted summary judgment to OTS on the grounds that the 12 U.S.C. § 1818(i)(1) limits a district court's jurisdiction to the enforcement of banking agency orders. The district court found that §1818(i)(1) expressly forbids a district court to review, suspend or terminate OTS orders. Casey argues that he did not ask the district court to review, suspend or modify the OTS order. He contends that as a defense to the OTS enforcement action he requested that the district court rule on the legal effect of the OTS order, specifically whether the OTS order was void as a matter of law because the order violated ERISA's anti-alienation provision.

Before the district court were two separate actions which the district court consolidated; the enforcement action brought by OTS against Casey,  and the interpleader action brought by Rhoades

naming OTS, TSLD, Casey and the other plan participants as defendants. Therefore, we will address the district court's jurisdiction in each suit separately.[3]

The jurisdictional scheme for a federal banking agency's cease and desist orders is set forth in the Financial Institutions Supervisory Act of 1966 (FISA), 80 Stat, 1046, as amended, 12 U.S.C. § 1818 et seq. FISA § 1818(b) gives a federal banking agency, such as OTS, the power to issue a cease and desist order against any banking institution affiliated party who the agency has reasonable cause to believe has been engaging in unsafe or unsound practices. A cease and desist order becomes effective at the expiration of thirty days after the service of the order upon the institution affiliated party, in the present case that party being Casey.[4] See 12 U.S.C. § 1818(b)(2).

FISA also provides a comprehensive system for judicial review of an effective cease and desist order. See Board of Governors of Fed. Reserve Sys. of U.S. v. Mcorp Financial Inc., 502 U.S. 32, 37, 112 S.Ct. 459, 463, 116 L.Ed. 2d 358 (1991). A party may obtain review of the order issued by the banking agency by filing it in a Court of Appeals of the United States. See 12 U.S.C. § 1818(h)(2). The banking agency may apply to a United States district court for the *enforcement* of an effective and outstanding order, and the district court has the jurisdiction and power to order compliance with the OTS order. See 12 U.S.C. § 1818(i)(1) (emphasis added). The district court does not have jurisdiction to affect by injunction or otherwise the enforcement of any order, or to review, modify, suspend, terminate or set aside any order. Id.

The case law also outlines and clearly forecloses the jurisdiction of a district court to modify, or review banking agency orders. In MCorp., the Supreme Court held that the plain, preclusive

---

[3] In the April 1997 order which granted summary judgment and in the June 1997 order which distributed the interplead funds, the district court does not separate discussion of the enforcement complaint and the interpleader action and how the court's jurisdiction may differ in the two matters.

[4] Casey argues that the OTS order which was issued against him as provided for in the consent agreement was not "effective", because to be an "effective" order the order must be legal, valid and enforceable. However, the statute does not impose these requirements. The statute clearly states that an order is "effective" thirty days after service of the order. See FDIC v. Bank of Coushatta, 930 F.2d 1122, 1125 (5th Cir. 1991).

language of § 1818(i) "provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin" administrative proceedings. MCorp., 502 U.S. at 44. This court has also found that § 1818(i) on its face is sufficient to deprive the district court of jurisdiction to review, modify or terminate banking agency disciplinary actions. See e.g., Landmark Land Company, Inc., 948 F.2d 910, 912 (5th Cir. 1991); Board of Governors of the Federal Reserve System v. DLG Financial Corp., 29 F.3d 993, 999 (5th Cir. 1994). Therefore, based on the plain and preclusive language of § 1818(i)(1) the district court properly concluded that it did not have jurisdiction in the enforcement action to modify or terminate the OTS order.

Casey nonetheless argues that the jurisdictional scheme of §1818(i) is inapplicable to this case because he did not ask the district court to modify or suspend the OTS order, but instead presented a defense to the OTS order, namely that the OTS order violated the anti-alienation provision of ERISA. Casey asserts that after considering his defense, the district court had jurisdiction to find the OTS order void as a matter of law. However, if the district court had considered Casey's defense and declared the OTS order void and therefore unenforceable, that decision would have been tantamount to the district court's modifying or terminating the OTS order. This is an action which is expressly prohibited by § 1818(i).

The proper course of action for Casey would have been for him to challenge the OTS order in this court. Casey entered into the consent agreement and the OTS order was issued in June 1993. Section 1818(h) provides that an institution affiliated party has within 30 days after the date of service of the agency order to seek review in the Court of Appeals, and request that the agency order be modified, terminated, or set aside.[5] Casey chose to disregard the OTS order by not seeking timely review of the order, not executing the waiver of his benefits, and instead waiting until OTS filed an

_____

[5] There are many cases in which an institution or institution affiliated party has challenged a banking agency's final order in the Court of Appeals, as provided for in § 1818(h). See e.g., Pharaon v. Board of Governors of the Federal Reserve System, 135 F.3d 148 (D.C. Cir. 1998); Long v. Board of Governors of Federal Reserve System, 117 F.3d 1145 (10th Cir. 1997); Hendrickson v. FDIC; 113 F.3d 98 (7th Cir. 1997); Rapp v. OTS, 52 F.3d 1510 (10th Cir. 1995).

7

enforcement complaint to submit his ERISA argument as a defense.[6] Therefore, the district court properly concluded that it did not have jurisdiction to declare the OTS order void as a matter of law because that action would have been equivalent to terminating or modifying the OTS order.

## 2. ERISA's Anti-alienation Provision

While admittedly the district court did not have jurisdiction under §1818 to consider Casey's ERISA defense the district court did have jurisdiction to consider Casey's ERISA argument as part of the court's effort to fashion a solution to the interpleader action. The interpleader complaint specifically requested that the court determine the rights of all the named parties as to the disputed ESOP funds, and to distribute the benefits according to the court's determination. Therefore, looking through the lens of the interpleader action, instead of through the prohibitive lens of 1818(i), it was proper for the district court to resolve the ERISA issue. Due to the unusual circumstance of the unopposed consolidation of the enforcement and interpleader actions, resolution of Casey's ERISA argument was inextricably linked to a final disposition of the interpleader action. The district court properly provided full consideration of Casey's ERISA arguments, and thus we will review this issue.

Casey argued to the district court and contends on appeal that the OTS order should be declared void and unenforceable because it violates the anti-alienation provision of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, as amended, 29 U.S.C. § et seq. The anti-alienation provision of ERISA, Section 1056(d)(1) states that each pension plan "shall

---

[6] One circuit has suggested that under certain circumstances a district court does have jurisdiction to hear a party's defense to an OTS enforcement action. In OTS v. Henry, 43 F.3d 507 (10th Cir. 1994), OTS issued cease and desist orders against Anne Henry for participating in improper banking transactions. After issuance of the OTS order Henry filed an action in the district court seeking to enjoin OTS from enforcing the order. See Henry, 43 F.3d at 510. The Tenth Circuit found that the district court lacked jurisdiction to decide Henry's complaint because to decide in her favor would be "tantamount to setting aside the consent order." Id. at 513. The court also stated that Henry could raise her affirmative defense of fraud to challenge the OTS consent order if OTS attempted to enforce the order in the district court. Henry is distinguishable from the present case because Henry's defense was fraud which went to the issue of whether Henry knowingly consented to the issuance of the OTS order. In the present case there is no question that Casey knowingly and voluntarily consented to the issuance of the OTS order. Also, in Henry the institution affiliated party, Henry, did seek judicial review of the OTS order prior to OTS filing an enforcement action ,although she brought that challenge in the district court and not the Court of Appeals.

provide that benefits provided under the plan may not be assigned or alienated." In general, the anti-alienation provision will be read broadly as a "protective policy of special intensity" which reflects the policy that retirement funds should remain inviolate until retirement. Boggs v. Boggs, 520 U.S. 833, 851, 117 S.Ct. 1754, 1765, 138 L.Ed. 2d 45 (1997).

However, the anti-alienation provision of ERISA is not absolute. Courts, including this one, have noted that there is an exception to ERISA's anti-alienation provision for a knowing and voluntary waiver of retirement benefits that is executed to reach a settlement. See Finz v. Schlesinger, 957 F.2d 78, 82 (2d Cir. 1992) (holding that plan participant may execute a valid waiver of pension benefits as long as the waiver is made knowingly and voluntarily); Lumpkin v. Envirodyne Industries, Inc., 933 F.2d 449, 455 (7th Cir. 1991) (holding that the anti-alienation provision of ERISA manifests Congress's intent to prevent a worker from unknowingly signing away pension benefits, but does not impose a bar on settlement agreements in which benefits are knowingly and voluntarily waived).

This court in Stobnicki v. Textron, 868 F.2d 1460, 1465 (5th Cir. 1989) held that "a controversy between good-faith adverse claimants to pension plan benefits is subject to settlement like any other, and that an assignment made pursuant to a bona-fide settlement of such a controversy is not invalidated by the anti-alienation provision of ERISA, 29 U.S. C. § 1056(d)(1)." In Stobnicki, a common law husband named his brother as his beneficiary for his retirement benefits. After the husband died, his brother's successor in interest entered into a settlement agreement with the common law wife and executed an instrument that assigned to the common law wife all rights to her late husband's retirement benefits. This court upheld this voluntary assignment of retirement benefits finding that it furthered the purposes of ERISA, by not wasting retirement benefits on the costs of litigation. In Stobnicki, this court thoroughly examined the legislative history of ERISA and the effect that the legislative history has on the scope of the anti-alienation provision. We held that courts "will not ascribe to Congress the intent of making unreasonable law--one requiring terminal litigation rather than settlements as does the general law," and therefore the apparent statutory bar against alienation

9

of pension benefits should yield to reason and allow benefits to be voluntarily waived for settlement purposes. Stobnicki, 868 F.2d at 1463-1464.

In the present case, Casey knowingly and voluntarily entered into a settlement agreement with OTS in which he agreed to waive his retirement benefits. This was a bargained for exchange in which Casey waived his benefits in exchange for substantial consideration. OTS agreed not to pursue formal administrative litigation against Casey, which could have resulted in Casey's being ordered to pay civil penalties. This concession by OTS and TSLD was made in exchange for his promise to waive his retirement benefits. Furthermore, Casey is the ultimate sophisticated party in a transaction such as this because he was CEO of FirstBanc and trustee of the ESOP. We decline to ascribe to ERISA's anti-alienation provision an unreasonable interpretation which would frustrate knowing and voluntary settlements, such as the one entered into by Casey.

Casey argues that the Supreme Court's decision in Boggs, which was rendered after the district court's decision in the present case, stands for the proposition that *all* voluntary waivers of pension benefits violate ERISA's anti-alienation provision. We disagree. In Boggs, the pension plan participant's first wife predeceased him. In her testamentary instrument she transferred an interest in her ex-husband's undistributed pension plan benefits to the couple's children. See Boggs, 520 U.S. at 836, 117 S.Ct. at 1758. Under Louisiana community property law, the ex-wife was entitled to dispose of her community property interest in her husband's undistributed pension benefits in her will. See Boggs, 520 U.S. at 837, 117 S.Ct. at 1758. The ex-husband, who was the plan participant, did not knowingly or voluntarily waive his benefits in the plan, or enter into a settlement agreement with his ex-wife. The Supreme Court's primary holding in Boggs was that the Louisiana community property statute, to the extent that it allowed an ex-wife to assign her ex-husband's benefits, is preempted by ERISA. See Boggs, 520 U.S. at 844, 117 S.Ct. at 1762. The Supreme Court also concluded that Congress's intent to preempt state statutes that give an interest in pension benefits to nonbeneficiary, nonparticipant interests is bolstered by ERISA's anti-alienation provision. Boggs, 520 U.S. at 851, 117 S.Ct. at 1765. In the present case, Casey, the plan participant, has not been

10

divested of his rights to his pension benefits by an assignment made by a nonbeneficiary, nonparticipant third party. In this case, Casey himself, voluntarily agreed to waive his pension benefits in exchange for the agencies agreement to begin administrative litigation against him. Boggs did not address knowing and voluntary waivers of pension benefits by a plan participant that are made in exchange for substantial consideration. Therefore, the Supreme Court's holding in Boggs does not void the OTS Order. We conclude that the OTS order did not violate ERISA's anti-alienation provision, and that the district court did not have jurisdiction to modify or terminate the OTS order. Therefore, regarding the OTS enforcement complaint, the district court properly enforced the order and divested Casey of his interest in the ESOP benefits.

### 3. Interpleader Action

After granting summary judgment to OTS and TSLD finding that Casey had waived his rights to his ESOP benefits, in June 1997 the district court entered an order which distributed Casey's waived ESOP benefits to the other ESOP participants. Because this June 1997 order distributed Casey's waived ESOP benefits we assume that the June 1997 order was rendered in response to the interpleader action filed by Rhoades.[7]

Rhoades filed the interpleader action pursuant to 28 U.S.C. § 1335 and FED. R. CIV. P. 22 because he considered Casey, OTS and TSLD to be adverse claimants who might claim entitlement to the ESOP funds.[8] Pursuant to 28 U.S.C. §§ 2201-2202, Rhoades also requested that the court issue a declaratory judgment setting forth the rights of Casey, OTS, and TSLD to the disputed portion of the ESOP fund. Rhoades requested that the declaratory judgment address the validity of the OTS and TSLD orders as related to Casey's rights to the funds. Rhoades also urged the district court to allow him to deposit the disputed funds in the court registry, and that the court determine

---

[7] Neither in the June 1997 order nor the April summary judgment order did the district court discuss its jurisdiction or authority to distribute the ESOP funds that were in question.

[8] A prerequisite to filing an interpleader action is that there must be a single, identifiable fund. The legislative purpose of an interpleader action is to remedy the problems posed by multiple claimants to a single fund, and to protect a stakeholder from the possibility of multiple claims on a single fund. Wausau Insurance Companies v. Gifford, 954 F.2d 1098, 1100 (5th Cir. 1992).

11

the distribution of the ESOP funds as among Casey or the other plan participants, and that the funds be distributed in accordance with the court's instructions.

A district court has broad powers in an interpleader action. An interpleader action typically involves two stages. In the first stage, the district court decides whether the requirements for rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE: Civil 2d § 1714 (1986). If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants. Id. When there is no genuine issue of material fact the second stage may be adjudicated at summary judgment, and if there is a trial each claimant must prove their right to the fund by a preponderance of the evidence. Id. After entering a judgment in the interpleader action the district court also has the power to make all appropriate orders to enforce its judgment. 28 U.S.C. § 2361. In an interpleader action the district court may also enter an order restraining the claimants from instituting any proceeding affecting the property until further order of the court. Id.[9]

This was a proper interpleader action. There was a single fund, the ESOP benefits, with several adverse parties who could have attempted to claim these funds. At the time the ESOP was dissolved, Casey informed Rhoades that he sought to retain his interest in the ESOP benefits.[10] At this same time OTS and TSLD informed Rhoades that Casey had waived the benefits. Because this was a proper interpleader action in the second stage of the interpleader it would be proper for the district court to determine the rights of Casey, OTS, TSLD and the other ESOP participants to the funds. The district court had previously determined in the April 1997 summary judgment order and

---

[9] The interpleader complaint also requested that the court enter a declaratory judgment. Under the declaratory judgment statute the district court may declare the rights and other legal relations of any interested party and enter any necessary or proper relief based on the declaratory judgment. 28 U.S.C. §§ 2201-2202.

[10] Casey also claims that his wife as a beneficiary also has an interest in the ESOP benefits. However, his wife was never a party in the interpleader action, therefore this court will not address Casey's claims that his wife may have had an interest in the ESOP benefits.

memorandum opinion that the OTS and TSLD orders were enforceable. Based on this decision, it was reasonable for the district court in its determination of the parties' rights to the funds as demanded by the interpleader action to conclude that Casey had waived his rights to the ESOP benefits. OTS and TSLD had never asserted any right to obtain the waived ESOP benefits. The agencies had only requested that based on the orders and consent agreements Casey should waive his rights to the ESOP benefits. Once the district court had made the determination that Casey had waived his rights to the ESOP benefits, and the agencies claimed no right to obtain the ESOP benefits it was clear that the benefits should not be distributed to Casey or the banking agencies. Therefore, the proper resolution would be to return Casey's waived ESOP benefits to the general ESOP fund. However, the ESOP had already been dissolved, and the rest of the ESOP funds had already been distributed to the ESOP participants. The interpleader statute gives a district court the power to enter orders to effectuate its judgments, and Rhoades' interpleader complaint specifically requested that the district court decide how the ESOP benefits should be distributed and distribute the benefits according to the court's order.[11] Therefore, based on the general powers of a district court in an interpleader action and the particular circumstances of this case the district court did have the authority to enter an order to distribute Casey's waived ESOP benefits to the other ESOP participants.

**B.     TSLD Order**

The district court also granted summary judgment to TSLD finding that the TSLD order was fully enforceable. This court reviews the district court's grant of summary judgment de novo. See Rivers v. Central and South West Corporation, 186 F.3d 681, 682 (5th Cir. 1999).

---

[11] Other parties to the interpleader action also requested that the waived ESOP benefits be distributed by the district court. The ESOP participants were named as defendants in the interpleader action. Two of these participants, Vivian Wechie and Kathy Barnes, filed answers to the interpleader complaint and requested that the court award them any dollar amount to which they were legally entitled.

Casey argues that the district court erred in finding that res judicata barred him from collaterally attacking the TSLD Order.[12]  Texas law governs whether a claim is barred by the existence of a judgment rendered by a Texas administrative agency.  See Britton v. Seale, 81 F.3d 602, 606 (5th Cir. 1996).[13]  The doctrine of res judicata applies to relitigation of claims previously determined by an administrative agency.[14]  Harrison v. Gemdrill International Inc., 981 S.W.2d 714, 718 (Tex. App–Houston 1998, writ denied); see also Montgomery v. Blue Cross & Blue Shield, 923 S.W.2d 147, 150 (Tex. App.–Austin 1996, writ denied).  To determine whether an action is barred by res judicata the court should consider whether the prior judgment was rendered by a court with proper jurisdiction, whether there was a final judgment on the merits, that the parties are identical in both actions, and that the same cause of action is involved in both suits.  McDaniel v. Camp, 59 F.3d 548, 550 (5th Cir. 1995) (citing Sutherland v. Coburn, 843 S.W.2d 127, 130 (Tex. App.–Texarkana 1992, writ denied)).

First, TSLD had proper jurisdiction to issue the cease and desist order against Casey.  Sections 8.04, 8.05 gave TSLD as an administrative agency the power to regulate savings associations and to issue orders to prevent unsafe or unsound practices by the savings association or parties affiliated with the savings association.  Second, the TSLD Order was a final order issued based on the consent agreement between Casey and TSLD.  The order clearly stated that it was a final order, and that Casey waived his right to a full administrative hearing on the merits, and also waived

---

[12] This discussion is included to allow this court to fully address the appellant's arguments as presented.  The OTS order that was the subject of the discussion in Part A concerned the same ESOP benefits that are at issue in the TSLD order. Therefore, our holding that the district court properly enforced the OTS order and properly distributed the waived ESOP benefits pursuant to the interpleader action, renders our determination of the validity of the TSLD order inconsequential. TSLD did not file a brief in this appeal and did not appear at oral argument. However, the TSLD order was discussed by the district court and is submitted by the appellant as an issue for review.

[13] This case discusses the preclusive effect of a judgment rendered by a Texas court, by analogy Texas law also governs the preclusive effect of judgments rendered by a Texas administrative agency.

[14] While the TSLD Order was not the result of a judgment by the administrative agency, it was the product of a settlement agreement entered into by the administrative agency and Casey for Casey to avoid a full administrative hearing.

14

his right to appeal the order. Subsequent to issuance of the TSLD order, Casey never requested an administrative hearing on the merits of the TSLD order, and did not seek judicial review of the order. Casey claims that the parties to the interpleader action are not the same as the parties that entered into the consent agreement. Casey claims that his wife, as the named beneficiary of his ESOP benefits, and Rhoades as the plaintiff in the interpleader action, are new parties, and thus his claims should not be barred by res judicata. We disagree. Casey's wife never sought to intervene in the interpleader action and therefore any claims regarding her interests will not be considered on appeal. Rhoades is not a new party to the action because he does not assert any personal claim to the ESOP benefits. Therefore, the district court properly found that Casey's claim that the TSLD order is unenforceable is barred by res judicata.

Casey also argues that TEX. REV. CIV. STAT. ANN. art. 852 §§ 8.04, 8.05 which authorized TSLD to regulate state-chartered savings associations, are preempted by ERISA. Because Casey's challenge to the enforceability of the TSLD order is barred by res judicata we do not reach Casey's argument that §§ 8.04, 8.05 are preempted by ERISA. Furthermore, TEX. REV. CIV. STAT. ANN. art. 852 §§ 8.04,8.05 were repealed by the Texas Legislature effective September of 1997. Therefore, the issue of whether these statutes are preempted by ERISA is arguably moot. Therefore, we conclude that the district court properly granted summary judgment in favor of TSLD.

**C.     Attorney's Fees**

Casey admits that he failed to timely challenge the district court's award of $23, 955.21 in attorney's fees to Rhoades. Because Casey challenges the award of attorney's fees for the first time on appeal we will review the award for plain error. Under the plain error standard we will reverse the district court's award of attorney's fees only if the award implicates the substantial rights of the parties and seriously affects the fairness, integrity, or public reputation of judicial proceedings. See Crawford v. Falcon Drilling Co., 131 F.3d 1120, 1124 (5th Cir. 1997).

15

A district court has the authority to award reasonable attorney's fees in interpleader actions. See Corrigan Dispatch Company v. Casa Guzman, S.A., 696 F.2d 359, 364 (5th Cir. 1983). The award of attorney's fees is in the discretion of the district court, and fees are available when the interpleader is a disinterested stakeholder, and is not in substantial controversy with one of the claimants. See Phillips Petroleum Company v. Hazelwood, 534 F.2d 61, 63 (5th Cir. 1976). Rhoades submitted to the district court an application for attorney's fees which detailed his attorney's actions to properly represent him in the interpleader action. An affidavit submitted by Rhoades' attorney stated that the attorneys engaged in the necessary work for an interpleader action including drafting the original interpleader complaint, locating all of the ESOP participants, answering Casey's motions to dismiss the interpleader action, and participating in settlement discussions. Although the award of $23, 951 is a large sum in attorney's fees for an interpleader action, Rhoades did attempt to be discharged from the proceeding in February 1997. However, the district court declined to discharge Rhoades until a final distribution of the ESOP benefits was made.

Casey argues that Rhoades should not considered a "disinterested stakeholder" as required to receive attorney's fees in an interpleader action, because Rhoades attempted to direct the court to distribute the ESOP benefits in OTS and TSLD's favor. However, after a careful review of the record we disagree with Casey's contention that Rhoades participated in the litigation as an adversary to Casey's interests or as an ally to OTS and TSLD. Therefore, after a thorough review of the record we find that the court did not commit plain error in awarding Rhoades attorney's fees.

CONCLUSION

16

For these reasons we affirm the district court's grant of summary judgment to OTS and TSLD, the order which distributed the waived ESOP benefits, and the award of attorney's fees to Rhoades.