**GENERAL ELECTRIC CAPITAL ASSURANCE Plaintiff,**

v.

**Nanette Lee VAN NORMAN, Leslie Monroe Van Norman, and Amanda Duncan Defendants.**

No. CIV.A. G–02–044.

United States District Court, S.D. Texas, Galveston Division.

July 10, 2002.

Jeffrey A. Davis, McGinnis, Lochridge & Kilgore, Houston, TX, for General Electric Capital Assurance.

Wilfried Peter Schmitz, Wilfried P. Schmitz & Associates, Houston, TX, Lynn J. Klement, Attorney at Law, Angleton, TX, for Nanette Lee Van Norman, Leslie M. Van Norman, Amanda Duncan, Individually and as Administratrix of the Estate of Leslie Allen Van Norman.

*ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR DISCHARGE OF STAKEHOLDER, GRANTING DEFENDANT AMANDA DUNCAN'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT NANETTE LEE VAN NORMAN'S CROSS–MOTION FOR SUMMARY JUDGMENT*

KENT, District Judge.

This interpleader action concerns the competing claims of the daughter and the former wife of Leslie Allen Van Norman ("Leslie"). Now before the Court is Plaintiff General Electric Capital Assurance's ("GECA") Unopposed Motion for Discharge of Stakeholder,[1] Defendant Amanda Duncan's ("Duncan") Motion for Summary Judgment and Defendant Nanette Lee Van Norman's ("Van Norman") Cross–Motion for Summary Judgment. After very carefully considering all three remarkably well-prepared Motions and the Responses thereto, coupled with the relevant evidence and the applicable law, the Court hereby concludes that GECA's Unopposed Motion to Discharge Shareholder must be **GRANTED**, Duncan's Motion for Summary Judgment must be **GRANTED** and Van Norman's Cross–Motion for Summary Judgment must be **DENIED**.[2]

**I.**

In 1994, when Leslie purchased accidental death and dismemberment insurance policy number DVA 52539020 ("Policy") from AMEX Life Insurance Company, he designated Van Norman (his wife at the time) as the Policy's beneficiary. The express language of the Policy provided that

---

1. Defendants have represented to the Court that they do not oppose GECA's Motion to Discharge. Accordingly, the Court has characterized the Motion as unopposed.

2. Interestingly, neither the Parties not the Court has been able to find any case law directly on point. Therefore, at least at the federal level, this appears somewhat surprisingly to be a case of first impression.

upon Leslie's accidental death, AMEX would pay out the Policy's loss-of-life benefits ("Proceeds") to the Policy's designated beneficiary. Although Leslie and Van Norman divorced on September 28, 1999, Leslie never changed the Policy's beneficiary designation.

Leslie was tragically killed in a motorcycle accident on September 21, 2001, thereby triggering the Policy's loss-of-life clause. However, when GECA (the successor-in-interest to AMEX) attempted to pay out the Proceeds, a controversy arose. Both Duncan (Leslie's daughter and only child) and Van Norman asserted a stake in the $277,300 of Proceeds. In order to settle their competing claims, GECA filed this interpleader action, naming Van Norman, Duncan and Leslie's brother (Leslie Monroe Van Norman) as Defendants.

## II.

A district court analyzes an interpleader action in two distinct steps, the first of which requires the court to decide whether the jurisdictional requirements for an interpleader action have been met.[3] If there is a single fund at issue and adverse claimants to that fund, this requirement is usually satisfied. *See Rhoades v. Casey,* 196 F.3d 592, 600 (5th Cir.1999) (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1714 (1986)). If the district court decides that the interpleader action has been properly brought, the court will move on to the second stage of the analysis—determining the claimants' respective rights to the fund. *See id.* If no genuine issue of material fact exists, the second stage may be adjudicated at summary judgment. *See id.* On the other

hand, if the facts are disputed, each claimant must prove his or her right to the fund by a preponderance of the evidence at an ensuing trial. *See id.* After entering a judgment in an interpleader action, a district court has the ability to issue any and all appropriate orders that are necessary to ensure the judgment's enforcement. *See id.* (citing 28 U.S.C. § 2361).

## III.

The Court concluded that this matter is a proper "rule" interpleader action in a previous Order. Consequently, the Court finds itself at the second stage of its interpleader analysis, wherein the Court must address the rights of the each Party to the Proceeds.

### 1. *GECA*

In GECA's Unopposed Motion to Discharge Stakeholder, GECA disclaims any further interest in the Proceeds and moves to be discharged from any and all liability that it has or may have to the Defendants. Because Defendants do not oppose GECA's Motion, and because there is no longer any material controversy involving GECA, the Court concludes that GECA's Motion is meritorious. Accordingly, GECA's Motion to Discharge Stakeholder is hereby **GRANTED**. GECA is therefore **DISCHARGED** from this matter and Defendants are hereby **PERMANENTLY ENJOINED** from asserting any further claims against GECA relating to the Proceeds or the Policy.

### 2. *Leslie Monroe Van Norman*

GECA filed suit against Leslie Monroe Van Norman ("Leslie Monroe")

---

**3.** An interpleader lawsuit may be characterized as a "statutory" interpleader action brought under 28 U.S.C. § 1335, or, alternatively, as a "rule" interpleader action brought under 28 U.S.C. § 1332 and Fed.R.Civ.P. 22. In its Order Denying Amanda Duncan's Motion to Dismiss for Lack of Subject Matter Jurisdiction, issued April 18, 2002, the Court determined that the instant matter qualifies as a "rule" interpleader action. The requirements for "statutory" interpleader are not satisfied by the facts of this case.

because GECA believed that Leslie Monroe could potentially claim the Proceeds. However, other than signing a Waiver of Service of Summons on May 6, 2002, Leslie Monroe has not appeared in this litigation whatsoever. The Court presumes that Leslie Monroe's reluctance to participate in this matter stems from his lack of desire to claim any portion of the interplead funds as his own. This conclusion is bolstered by the fact that on October 31, 2001, Leslie Monroe filed a Disclaimer in the County Court-at-Law No. 3 for Brazoria County, Texas ("Probate Court") wherein he disclaimed any and all interest in any property that he may be entitled to as a result of Leslie's death. On the basis of Leslie Monroe's total absence from this litigation, coupled with his state court Disclaimer, the Court hereby concludes that no controversy exists between Leslie Monroe and the remaining Defendants, as matter of law. Accordingly, Leslie Monroe is hereby **DISMISSED WITH PREJUDICE** from this matter.

### 3. *Nanette Van Norman*

■ Van Norman maintains that, as the Policy's designated beneficiary, she is entitled to 100% of the Proceeds. On first glance, this appears to be the result mandated by the Policy's express language, which reads:

> Benefits for loss of life will be paid: (1) in accordance with the beneficiary designation in effect at time of payment; otherwise (2) to the first of the following classes of successive preference beneficiaries of which a member survives the Insured Person. Such classes are: (1) spouse; (2) children, including legally adopted children; (3) parents; (4) brothers and sisters; (5) estate.

However, because Leslie and Van Norman were divorced at the time of Leslie's death, Leslie's designation of Van Norman as the Policy's beneficiary does not automatically entitle her to receive the Proceeds. Rath-er, and regrettably for Van Norman, the applicable provisions of the Texas Family Code mandate a different conclusion.

■ In Texas, a divorce decree should address the rights of each spouse in all insurance policies that are in effect at the time the decree issues. *See* Tex. Fam. Code § 7.004 ("In a decree of divorce ... the Court shall specifically divide or award the rights of each spouse in an insurance policy"). In this case, however, the state court that oversaw Leslie and Van Norman's divorce failed to speak to the Policy. Fortunately, however, the Texas Family Code contains a provision that addresses such oversights. That provision states in pertinent part:

> If in a decree of divorce ... if the court does not specifically award all of the rights of the spouses in an insurance policy other than life insurance in effect at the time the decree is rendered, the policy remains in effect until the policy expires according to its own terms.... The proceeds of a valid claim under the policy are payable as follows: ... if the insurance coverage is directly related to the person of one of the former spouses, to that former spouse.

Tex. Fam.Code § 7.005. Here, the Policy (an accidental death and dismemberment policy) qualifies as "an insurance policy other than life insurance in effect at the time the [divorce] decree [was] rendered." Furthermore, the Policy expired according to its own terms and was directly related to Leslie's "person." Thus, § 7.005 mandates that the Proceeds are payable Leslie, the former spouse to whom the Policy directly relates. Van Norman's claim to the Proceeds is therefore invalid, as a matter of law. As such, Van Norman's Cross–Motion for Summary Judgment is hereby **DENIED.**

#### 4. *Amanda Duncan*

On December 17, 2001, the Probate Court issued a Judgment Declaring Heirship wherein it ordered and decreed that Duncan is the sole heir to all real and personal property owned by Leslie's estate. And as explained above, Leslie's estate is the rightful owner of the Proceeds. Accordingly, the Court hereby **ORDERS** that the interplead funds be paid to the Registry of the Probate Court, so that so that the Probate Court may transfer the funds to Amanda Duncan. Because the Court finds that Duncan is entitled to the Proceeds, as a matter of law, Duncan's Motion for Summary Judgment is hereby **GRANTED**.

### IV.

As a final matter, the Court notes that GECA seeks to recover the attorneys' fees and costs that it has incurred in litigating this matter. In the Fifth Circuit, it is well-settled that a district court has authority to award reasonable costs and attorney's fees to the disinterested stakeholder in rule interpleader actions. *See Rhoades,* 196 F.3d at 603; *Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 696 F.2d 359, 364 (5th Cir.1983). However, the award of costs and attorneys' fees to the stakeholder is not automatic. Rather, the decision to make such an award is a matter that is ultimately vested within the sound discretion of the trial judge. *See Gulf Oil Corp. v. Olivier,* 412 F.2d 938 (5th Cir.1969). In order to allow the Court to make such a determination in this case, GECA is hereby **OR-DERED** to submit briefing within ten (10) days from the date of this Order that (1) specifically states why it is entitled to attorneys' fees and costs; and (2) provides a detailed accounting of the attorneys' fees and costs that it expended in litigating this matter, and for which it seeks reimbursement from the Proceeds. Defendants will have ten (10) days to respond to GECA's briefing. At that time, the Court will rule on whether GECA is entitled to an award of attorneys' fees and costs and if so, in what amount. Moreover, it is hereby **OR-DERED** that the interplead funds shall not be distributed by the Clerk of this Court to the Probate Court until the matter of GECA's requested attorneys' fees and costs has been finally resolved in this forum. Upon receipt and consideration of the foregoing submissions, the Court will enter a Supplemental Order and Final Judgment in due course.

**IT IS SO ORDERED.**